United States Bankruptcy Court
Southern District of Texas
**ENTERED**
May 10, 2022
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| TALEN ENERGY SUPPLY, LLC, *et al.,* | § § | Case No. 22-90054 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) Re. Docket No. 29 |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE PERFORMING UNDER PREPETITION HEDGING AGREEMENTS, (B) ENTER INTO AND PERFORM UNDER NEW POSTPETITION HEDGING AGREEMENTS, AND (C) GRANT RELATED LIENS AND SUPERPRIORITY CLAIMS AND POST POSTPETITION MARGIN COLLATERAL AND EXCHANGE COLLATERAL, (II) MODIFYING AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated May 10, 2022 (the "**Motion**")[2] of Talen Energy Supply and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for entry of an order pursuant to sections 362, 363, 364, 553, 1107, and 105(a) of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, and 6004, and Bankruptcy Local Rules 4001-1 and 9013-1 authorizing, but not directing, (i) the Debtors to (a) continue performing under their Prepetition Hedging Agreements, as may be amended pursuant to a Consent and Waiver or Postpetition FCM Agreement, (b) enter into and perform under Postpetition 1L Hedging Agreements and Postpetition FCM Agreements, and (c) grant Postpetition Hedging Liens and Superpriority Hedge Claims and authorize the posting of, and grant of liens upon, Postpetition Exchange Collateral and Margin Collateral, in accordance with and subject in all respects to the terms of this Interim Order, (ii) modification of the automatic

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

stay, and (iii) related relief, as more fully set forth in the Motion; and upon consideration of the Omohundro Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003 and is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Debtors are authorized, but not directed, pursuant to sections 362, 363, 364, 553, 1107, and 105(a) of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, and 6004, and Bankruptcy Local Rules 4001-1 and 9013-1 to: (i) continue performing under their Prepetition Hedging Agreements, as may be amended pursuant to a Consent and Waiver or Postpetition FCM Agreement, (ii) enter into and perform under Postpetition 1L Hedging Agreements and Postpetition FCM Agreements, (iii) deliver any Postpetition Exchange Collateral and Margin Collateral in the ordinary course, in accordance with and subject in all respect to the terms of the

Interim DIP Order, (iv) honor, pay, or otherwise satisfy as they become due all Hedging Obligations, including any margin delivery obligations, settlement amounts, indemnity obligations, guaranteed obligations, fees and expenses (including any out-of-pocket fees and expenses of legal and financial advisors), regardless of whether such Hedging Obligations arose before or after the Petition Date, and (v) grant Superpriority Hedge Claims, Postpetition Hedging Liens, and liens upon Postpetition Exchange Collateral and Margin Collateral, as applicable, to secure and otherwise ensure payment of the Hedging Obligations owed to the Hedge Counterparties as set forth herein, in accordance with and subject in all respect to the terms of the Proposed Interim DIP Order and DIP Documents (as defined in the Proposed Interim DIP Order).

2. Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief required in the Motion on a final basis (the "**Final Hearing**").

3. As security and assurance of the Debtors' obligations arising under the Postpetition 1L Hedging Agreements and in exchange for the Consenting 1L Hedge Counterparties providing benefits to the Debtors in accordance with this Interim Order:

> i. With respect to (x) the obligations, liabilities, and indebtedness arising under the Postpetition 1L Hedging Agreements after the Petition Date and (y) the obligations, liabilities, and indebtedness owed to each of J. Aron and Morgan Stanley arising under their respective Hedging Agreements before or after the Petition Date, the Consenting 1L Hedge Counterparties are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically properly perfected Postpetition Hedging Liens in accordance with the terms of such Postpetition 1L Hedging Agreements, and such liens shall be secured in the DIP Collateral by the DIP Liens pursuant to and in accordance with the terms of the Proposed Interim DIP Order upon its entry, without the necessity of the execution by the Debtors or the filing of security agreements, pledge agreements, mortgages, financing statements, or otherwise;

ii. Each of (x) the obligations, liabilities, and indebtedness arising under the Postpetition 1L Hedging Agreements after the Petition Date and (y) the obligations, liabilities, and indebtedness owed to each of J. Aron and Morgan Stanley arising under their respective Hedging Agreements before or after the Petition Date, shall constitute Superpriority Hedge Claims against each of the Debtors, jointly and severally, that are *pari passu* with the DIP Obligations provided under the Proposed Interim DIP Order; and

iii. the automatic stay provisions of section 362 and setoff provisions of section 553 of the Bankruptcy Code are hereby modified to the extent necessary to permit each Consenting 1L Hedge Counterparty to immediately and unconditionally (but, for the avoidance of doubt, subject to any grace or cure periods under, and other provisions of, the documents governing the applicable Postpetition 1L Hedging Agreement) exercise and enforce any and all rights and remedies provided for in the applicable Postpetition 1L Hedging Agreement, including but not limited to, any rights and remedies relating to the suspension of performance thereunder, the termination, liquidation, or acceleration thereof, withholding of performance thereof, and setoff, netting, application of any Margin Collateral, and collection of any payment, settlement payment, termination value, termination payment, and any other amounts that the counterparty would be entitled to receive from or otherwise be obligated to pay to any Debtor under a Postpetition 1L Hedging Agreement in accordance with the terms of such agreement (including the setoff and netting of any prepetition obligations against any post-petition obligations thereunder) without the need for any notice (except as provided in the applicable Postpetition 1L Hedging Agreement) or further Court order, and the exercise of any such rights and remedies by the Consenting 1L Hedge Counterparties shall not be stayed, avoided, or otherwise limited as result of the pendency of these chapter 11 cases.

4. As security and assurance of the Debtors' obligations arising under the Postpetition FCM Agreements and in exchange for the Consenting FCMs providing benefits to the Debtors in accordance with this Interim Order:

i. with respect to the obligations, liabilities, and indebtedness arising under the Postpetition FCM Agreements (whether arising from, related to or in connection with Exchange Traded Hedges entered into by the Debtors prior to or subsequent to the Petition Date), the Consenting FCMs are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically properly perfected first-priority liens on any Postpetition Exchange Collateral granted in accordance with the terms of such Postpetition FCM Agreements (and continuing first-priority liens

3

        on any collateral posted to each such party under the Postpetition FCM Agreement or its predecessor FCM agreement prior to the Petition Date), without the necessity of the execution by the Debtors or the filing of security agreements, pledge agreements, mortgages, financing statements, or otherwise;

  ii.      the obligations, liabilities, and indebtedness arising under the Postpetition FCM Agreements (whether arising from, related to or in connection with Exchange Traded Hedges entered into by the Debtors prior to or subsequent to the Petition Date) (including any guaranty obligations) shall constitute Superpriority Hedge Claims against each of the Debtors; and

  iii.     the automatic stay provisions of section 362 and setoff provisions of section 553 of the Bankruptcy Code are hereby modified to the extent necessary to permit each Consenting FCM to immediately and unconditionally (but, for the avoidance of doubt, subject to the Debtors' rights under the documents governing the applicable Postpetition FCM Agreement) exercise and enforce any and all rights (including, but not limited to, the right to require the Debtors to deliver margin to post as collateral in the form of cash and/or letters of credit or other forms of collateral acceptable to the FCM to secure the Debtors' obligations under the FCM Agreements, both as an initial margin and as variation margin, as may be required by an exchange or an FCM, in their discretion) and remedies provided for in the applicable Postpetition FCM Agreement, including, but not limited to, any rights and remedies relating to the suspension of performance thereunder, the termination, liquidation, or acceleration thereof, withholding of performance thereof, and setoff (including any setoff against any Postpetition Exchange Collateral), netting, and application of any payment, settlement payment, termination value, termination payment, and any other amounts that the counterparty would be entitled to receive from or otherwise be obligated to pay to any Debtor under a Postpetition FCM Agreement in accordance with the terms of such agreement without the need for any notice (except as provided in the applicable Postpetition FCM Agreement) or further Court order, and the exercise of any such rights and remedies by the Consenting FCMs shall not be stayed, avoided, or otherwise limited as result of the pendency of these chapter 11 cases.

5.      As a condition to the relief provided in Paragraphs 3 and 4 of this Interim Order, to the extent provided in any Consenting 1L Hedge Counterparty's Postpetition 1L Hedging Agreement, such Consenting 1L Hedge Counterparty agrees to engage in good faith negotiations

to enter into postpetition hedging transactions with the Debtors under the applicable Hedging Agreements on terms consistent with the historical practice between the parties.

      6.      Each Consenting 1L Hedge Counterparty and Consenting FCM shall be deemed to have agreed to the terms and conditions of this Interim Order. To the extent this Court determines that any Consenting 1L Hedge Counterparty failed to comply with any term or provision of this Interim Order or the applicable Postpetition 1L Hedging Agreement (following notice and a hearing), this Court may order that such Consenting 1L Hedge Counterparty's prepetition claims shall not constitute Superpriority Hedge Claims and/or be secured in the DIP Collateral by the DIP Liens, as applicable, and grant any other appropriate relief to recover any transfers made by the Debtors to such party on account of any prepetition claims. For the avoidance of doubt, paragraphs 5 and 6 of this Order shall only apply to Consenting 1L Hedge Counterparties to the extent such terms are set forth in the applicable Postpetition 1L Hedging Agreement and shall not apply to any payments made in the ordinary course on account of any prepetition Hedge Obligations.

      7.      If any or all of the provisions of this Interim Order are stayed, vacated, and/or modified in a manner adverse to a Consenting 1L Hedge Counterparty or Consenting FCM (other than in accordance with paragraph 6), or this Interim Order otherwise terminates, such stay, modification, vacation or termination will not affect (i) the validity of any indebtedness, obligation or liability incurred by the Debtors to each Hedge Counterparty before the receipt of written notice by such Hedge Counterparty of the effective date of such stay, modification, vacation, or termination, (ii) the validity or enforceability of the Postpetition Hedging Liens, liens on Postpetition Exchange Collateral, Margin Collateral, Superpriority Hedge Claims, or netting, setoff, collection, and termination rights authorized or created by this Interim Order, any

Postpetition 1L Hedging Agreement, or any Postpetition FCM Agreement, or any related documents, as the case may be, for the benefit of the Hedge Counterparties, and (iii) the rights of each Hedge Counterparty to exercise remedies as set forth in the Hedging Agreements and provided under the safe harbor provisions of the Bankruptcy Code. Each Hedge Counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

8. The relief and protections afforded by this Interim Order shall survive any order that may be entered (i) converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code or (ii) dismissing any of these chapter 11 cases and shall be in addition to any and all rights, powers or privileges provided for by the Hedging Agreements.

9. The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payments. The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

10. The Debtors are authorized to pay any fees, costs, indemnities, expenses (including reasonable and documented out-of-pocket legal and other professional expenses of each Consenting FCM and Consenting 1L Hedge Counterparty), disbursements and other charges, costs, fees, expenses, and indemnities payable under the Postpetition FCM Agreements or Postpetition 1L Hedging Agreement. Any such fees, costs, indemnities, expenses, and disbursements, whether incurred, paid or required to be paid prior to the Petition Date or after the

Petition Date, and whether or not included in the Debtors' DIP Budget (as defined in the DIP Order), are authorized to be paid in accordance with the applicable FCM Agreement or Postpetition 1L Hedging Agreement (and any Postpetition Exchanged Collateral held by any Consenting FCM or Margin held by any Consenting 1L Hedge Counterparty may, but is not required to be applied, for payment) as contemplated in this Interim Order and the Postpetition FCM Agreement or Postpetition 1L Hedging Agreement, as applicable.

11. The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

12. Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be deemed to be (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

13. Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the Proposed Interim DIP Order and the DIP Documents. Nothing herein is

intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Proposed Interim DIP Order or the DIP Documents (as defined therein). To the extent there is any inconsistency between the terms of the Proposed Interim DIP Order or the DIP Documents and the terms of this Interim Order or any action taken or proposed to be taken hereunder, the terms of the Proposed Interim DIP Order or the DIP Documents, as applicable, shall control. For the avoidance of doubt the Debtors are not authorized to make any payments to or on behalf of, a Non-Debtor Affiliate (as defined in the DIP Documents) except as permitted by this Interim Order, the Proposed Interim DIP Order, and the DIP Documents.

14. The Debtors shall maintain a matrix/schedule of Postpetition 1L Hedging Agreements and Postpetition FCM Agreements entered into or terminated pursuant to this Order, including the following information: (a) the names of the respective parties to the agreements; (b) the operative dates of the agreements; (c) the general terms of the agreements; and (d) any agreements that have been terminated by reason of default or occurrence of a termination event. The Debtors shall provide a copy of such matrix/schedule on a confidential basis to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases every 30 days beginning upon entry of this Order.

15. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

16. Omitted.

17. Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

---

[3] "Restructuring Support Agreement" has the meaning ascribed to it in the Omohundro Declaration.

18. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

19. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Interim Order.

20. This Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

21. The Final Hearing shall be held on **June 8, 2022 at 3:30 p.m. (Prevailing Central Time)** and any objections or responses to the Motion shall be filed on or prior to **June 3, 2022 at 5:00 p.m. (Prevailing Central Time)**.

Signed: May 10, 2022

_____
Marvin Isgur
United States Bankruptcy Judge

9