IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **Talen Energy Supply, LLC,** *et al*,[1] | § | Case No. 22-90054-MI |
| | § | |
| Debtors. | § | Jointly Administered |

**LEAR CORPORATION'S OBJECTION TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF
EXECUTORY CONTRACTS *NUNC PRO TUNC* TO PETITION DATE**

Lear Corporation ("**Lear**") files this Objection to Debtors' Motion for Entry of an Order Authorizing Rejection of Executory Contracts *Nunc Pro Tunc* to Petition Date[2] (the "**Motion**").

1. Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "**Code**") on May 10, 2022 ("**Petition Date**"). Debtors continue to operate their businesses as debtors in possession.

2. Lear operates a manufacturing facility in Pine Grove, Pennsylvania that supplies products to automotive and other industries. As part of its efforts to manage its substantial energy requirements, on or about December 5, 2019, Lear entered into a Retail Electricity Agreement (the "**Lear REA**") with one of the Debtors, Talen Energy Marketing, LLC ("**Talen**"), under which Talen agreed to provide electric supply to Lear at its Pine Grove facility at a pre-determined price for a period of 36 months (from January 1, 2020 through December 31, 2022).

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtor's claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address if 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.
[2] ECF No. 15.

4895-0324-8419_3

3. In the Motion, Debtors seeks to reject hundreds of what it identifies as "Retail Purchase Agreements" and "Retail Broker Agreements" *nunc pro tunc* to the Petition Date, including the Lear REA.

4. Despite the fact that the Motion was clearly prepared in advance of Debtors' bankruptcy filing and that Debtors clearly engaged in pre-bankruptcy negotiations and discussions with many of their creditors, based upon investigation to date, it appears that Debtors did not contact or provide any notice to Lear of their intention to seek rejection of the Lear REA. Upon information and belief, Debtors also provided no advance notice to any of the hundreds of other customers whose contracts they seek to reject in the Motion. Instead, Debtors filed their Motion on the first day of these bankruptcy proceedings and now seek equitable relief in the form of retroactive rejection *nunc pro tunc* to the Petition Date. Such relief is inappropriate when balancing the equities.

5. Debtors could have provided a reasonable notice of their intent to retroactively reject the various contracts but failed to do so. Such notice would have allowed the counterparties, including Lear, to locate the best possible alternative source for providing electric utility services and to mitigate their damages, which, in the current market will result in significant increased costs for Lear and hundreds of other customers. Additionally, Debtors' own actions created the basis for Debtors' purported necessity for retroactive relief. Therefore, the Court should reject Debtors' request for *nunc pro tunc* rejection.

6. As of the Petition Date, the Lear REA provides for Lear to receive electrical services from Talen at significantly below the current market prices. Upon information and belief, based upon information set forth in the objections filed by Richards Energy Group, Inc. and URA, Inc. (ECF No. 342) and Masonic Villages of the Grand Lodge of Pennsylvania and Conestoga

Wood Specialties Corp. (ECF No. 344): (a) Debtors purchased electricity to fulfill their obligations under the Retail Purchase Agreements under hedge contracts, which allowed Debtors to purchase the electricity at below current market prices (the "**Hedge Contracts**"); (b) Debtors sold their Hedge Contracts prior to the bankruptcy filing at a significant profit and distributed the proceeds of the sale of the Hedge Contracts to an affiliated, non-Debtor entity; (c) Debtors' sale of the Hedge Contracts resulted in Debtors' inability to provide the electricity services under the Retail Purchase Agreements and to fulfill their obligations under the Retail Broker Agreements without incurring losses; (d) Debtors have now asked this Court to allow them to reject and terminate the various agreements because they cannot provide the electricity services without incurring losses, a problem caused by Debtors' own actions in selling the Hedge Contracts at a significant profit; and (e) Debtors have made a significant profit in the selling of the Hedge Contracts and now seek to force the customers to pay for that profit by incurring the dramatically increased prices for electricity.

7. The result of the rejection of the various agreements is to force each of the customers, to purchase electricity in the short term from the applicable utility at its current rate, and longer term from other suppliers at current market rates, each of which will result in dramatically increased unbudgeted costs to each of the customers, including Lear.

8. Although Lear acknowledges that Chapter 11 debtors generally may exercise their right to reject executory contracts as a matter of their business judgment, retroactive relief should not be permitted under these circumstances. Rather, the proposed rejection of the Lear REA should not become effective until sufficient notice has occurred and Lear has time to identify a replacement supplier of electricity, and to negotiate a new contract with such a supplier in an orderly manner.

9. A retroactive rejection date will severely harm Lear; whereas, providing a wind-down opportunity of at least sixty (60) days from the date of an order approving rejection would allow Lear time to mitigate its potential damages by shopping for a new energy supply contract, so there is a seamless transition, rather than an automatic reversion back to the current, non-contracted, market rates from the default electric utility.

10. Lear reserves all rights and remedies, including but not limited to the right to file further Objections to any amended Motion, a Motion for Allowance of Administrative Expense Claim for all post-petition, pre-rejection damages, as well as a Proof of Claim for rejection damages.

WHEREFORE, Lear respectfully requests that the Court deny Debtors' Motion to Reject *Nunc Pro Tunc*, and instead enter an order making the effective date of rejection of the Lear REA at least sixty (60) days after the date of the Order.

Dated: June 3, 2022                  Respectfully submitted,

                                     **BODMAN PLC**

                                     By: /s/ Robert J. Diehl, Jr.
                                     Robert J. Diehl, Jr.
                                     Michigan Bar No. P31264
                                     Brian R. Trumbauer
                                     Michigan Bar No. P57747
                                     Sixth Floor at Ford Field
                                     1901 St. Antoine Street
                                     Detroit, MI 48226
                                     (313) 393-7597
                                     rdiehl@bodmanlaw.com
                                     btrumbauer@bodmanlaw.com

                                     Attorneys for Lear Corporation
                                     *Motions for Pro Hac Vice admission pending*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 3, 2022, a copy of this Objection was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

/s/ Robert J. Diehl, Jr.
Robert J. Diehl, Jr.