IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TALEN ENERGY SUPPLY, LLC, *et al.*, | § | Case No. 22-90054 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**EMERGENCY MOTION OF TALEN ENERGY CORPORATION
TO CONTINUE HEARING ON DEBTORS' BACKSTOP MOTION**
[Relates to Docket No. 524]

> **Emergency relief has been requested. Relief is requested not later than 3:00 p.m. on June 28, 2022. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on June 28, 2022 at 3:00 pm (central prevailing time) in Courtroom 404, 4th floor, 515 Rusk Avenue, Houston, TX 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

1

> **name, complete the required fields and click "Submit" to complete your appearance.**

Talen Energy Corporation ("**TEC**"), as the 100% equity owner of the above-captioned debtors and debtors in possession (the "**Debtors**"), submits this Emergency Motion (the "**Motion**") to continue the hearing (the "**Backstop Approval Hearing**") on the *Motion of Debtors for Order (I) Authorizing Entry into Backstop Commitment Letter, (II) Approving Obligations Thereunder, and (III) Granting Related Relief* [Docket No. 524] (the "**Backstop Motion**").[2] In support of this Motion, TEC respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. On the eve of filing the Chapter 11 Cases, the Debtors entered into a hastily negotiated and incomplete RSA and Restructuring Term Sheet premised on a $4.5 billion total enterprise value. The Debtors rushed to enter into this transaction to avoid filing for chapter 11 without any deal at all. But the RSA and Restructuring Term Sheet are fatally flawed because the $4.5 billion total enterprise value and distributable cash at emergence as anticipated by the terms of the RSA (both of which are outdated figures derived from an outdated business plan) would result in a material recovery for TEC. Nonetheless, the chapter 11 plan the Debtors contemplate would violate the absolute priority rule by leaving TEC with nothing to the benefit of the holders of Unsecured Notes (the "**Unsecured Noteholders**").

2. In addition to being fatally flawed, the RSA and Restructuring Term Sheet were also incomplete. They contained only an outline for a Rights Offering backstop in an ***undefined amount*** – somewhere between $600 million and $1.65 billion – by an ***undefined group*** of "certain

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Backstop Motion.

[3] Capitalized terms used but not defined in this Preliminary Statement have the meanings given to them elsewhere in this Motion.

2

members of the Ad Hoc Group of Unsecured Noteholders." Indeed, no Unsecured Noteholders were required to commit to the backstop until 21 days after the Petition Date, the milestone to enter into the Backstop Commitment Letter. Certain Unsecured Noteholders have now entered into that commitment letter and have asked the Court to approve – among numerous other fees – a termination fee of at least $135 million to which the Backstop Parties will be entitled if the fatally flawed RSA and Restructuring Term Sheet do not result in a confirmed plan because they violate the absolute priority rule.[4]

3.  The Debtors do not dispute that the business plan (based on pricing as of April 8, 2022) provided to parties in connection with negotiating the RSA is outdated due to a significant improvement in power markets. Based on the improved power markets, corroborated by TES's own more recent internal reports, TEC anticipates a material improvement in cash generation, gross margin, and operating performance that could significantly increase potential distributable value, including total enterprise value, as compared to the previous business plan. Moreover, TES has not (and cannot per the contractual restrictions of the RSA) determine if there are alternative transactions that would generate more value for the estates. As TEC intends to show at the Backstop Approval Hearing – with the benefit of discovery from the Debtors and Unsecured Notes Group – positive power market trends increase the amount to which TEC is entitled, bolstering TEC's arguments that the chapter 11 plan contemplated by the RSA cannot be confirmed.

4.  In light of the improved pricing, together with the Debtors' ability to hedge, TES admits that it is reworking its business plan, but at this point no revised business plan has been submitted to the TES board for approval let alone shared with TEC. TEC is entitled to obtain

---

[4] Upon information and belief, the Backstop is oversubscribed—which is not surprising based on the improved power markets described herein.

fulsome discovery and to diligence the Debtors' new business plan, the Debtors' past and present valuation models, and the related communications that served as the foundation for the RSA and Restructuring Term Sheet. Given the circumstances of the power markets, the terms of the RSA and Restructuring Term Sheet are based on an understated total enterprise value and are likely to result in a termination fee that will effectively impair the Debtors' ability to maximize value and thus will ultimately be borne by equity (i.e., TEC, which owns 100% of the equity in the Debtors).

5. Rather than slow down to re-evaluate the Backstop Commitment and associated fees in light of their new business plan, and to engage in meaningful dialogue with TEC and its advisors about these matters, the Debtors have taken the opposite approach: they have ***moved up the milestone*** for obtaining Court approval of the Backstop Motion (and its fees) ***by over two months***.[5] Curiously, neither the Backstop Commitment Letter nor its much shorter milestones were ever approved by the Talen Energy Supply, LLC ("***TES***") board of managers (the "***TES Board***") or, upon information and belief, the TES restructuring committee. Moreover, at the same time they are racing to Court to obtain approval of the large backstop fees, the Debtors are resisting depositions of those involved in the backstop negotiation, including the deposition of Debtors' Executive Vice President of Restructuring, Len LoBiondo, and have yet to make time to meet with TEC's advisors to discuss their revised business plan.

6. This updated business plan is a highly relevant topic for discovery in connection with the Backstop Motion: if the Debtors' RSA and Term Sheet were fatally flawed at a $4.5 billion total enterprise value, the value of equity in TES owned by TEC is even more in the money now. As a result, any plan to be proposed based on the RSA and Restructuring Term Sheet will

---

[5] Although the Debtors agreed to a 130-day milestone in the Restructuring Term Sheet, the Debtors have since asked the Court to approve a Backstop Commitment Letter which shortens the milestone to a mere 60 days after its execution (July 30, 2022, based on the execution date of May 31, 2022).

4

fail – essentially pre-ordaining that the Backstop Parties will receive at least a $135 million termination fee.

7. TEC thus respectfully moves for a mere ***two-week continuance*** of the Backstop Approval Hearing and objection deadline to allow for: (i) the Debtors to complete their updated business plan; (ii) the Debtors' advisors to meet (on both an initial and follow-up basis) with TEC's advisors about the updated business plan and related assumptions and implications; (iii) TEC's advisors to digest and analyze the updated business plan; and (iv) TEC to engage in discovery related to both (a) TES's total enterprise value and (b) negotiations related to entry into the RSA and Restructuring Term Sheet. This two-week extension is well within even TES's shortened milestones.[6] Importantly, TES has provided no reason – and cannot provide any reason – why this short two-week continuance will cause any harm to the estates.[7]

8. It is critical for all parties in interest, including TEC, to understand why TES would choose to race to the finish line rather than take the time to develop the most value-maximizing solution for all stakeholders consistent with its obligations as a debtor in possession operating in chapter 11. TEC is currently seeking discovery and limited depositions to understand the facts and motivations behind the sudden rush, in addition to the business plan and valuation issues discussed above. The discovery process – including review of emails and text messages, and depositions of the EVP of Restructuring and management – will shed light on what is driving this rushed process when there are no near-term deadlines imposed by the RSA.

---

[6] Under the Backstop Commitment Letter, the milestone for an order to assume the Backstop Commitment Letter is 60 days after entry into the Backstop Commitment Letter or July 30, 2022.

[7] While TEC is asking for a two-week continuance and will work to complete all necessary discovery and diligence during this period, it reserves the right to ask for more time, particularly if delivery of the Debtors' updated business plan is further delayed or if the factual record warrants a further continuance.

9. Though TEC has previewed these issues with the Debtors, the Debtors have been unwilling to grant interested parties more time to allow for an adequate investigation into the propriety of the Debtors' entry into the Backstop Commitment Letter and the apparent near term need for speed. As such, TEC has been forced to file this emergency motion seeking a continuance. It is impossible for the parties to conduct adequate discovery in the one week prior to the 4th of July, in advance of the objection deadline which currently is July 5th, even though the accelerated milestones only require approval of the backstop by July 30th.

10. TEC's position is straightforward: TEC was in the money under the hastily negotiated RSA and is further in the money today based on material market movements. Given those market movements, TEC believes the $4.5 billion total enterprise value relied upon two months ago as part of the RSA and Restructuring Term Sheet now undervalues the business. TEC submits that it is essential for the Court to have a fully developed evidentiary record before the Debtors irrevocably saddle themselves with significant administrative expenses (including through the Alternative Transaction Premium) and embark on a fool's errand towards an unconfirmable chapter 11 plan, one that would directly and materially impact TEC's recovery if the Debtors obtain approval of the Backstop Motion and continue their pursuit of an unconfirmable plan.[8]

11. In contrast, there is no reason why the short two-week extension would harm the Debtors and no reason has been given. And, indeed, additional time would benefit the Debtors for numerous reasons, including maximizing value for all involved stakeholders, which is their obligation as debtors in possession.

---

[8] Under the Restructuring Term Sheet, equity interests will be cancelled (subject to tax structuring considerations).

**JURISDICTION**

12. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**EMERGENCY RELIEF**

14. The Backstop Approval Hearing is currently scheduled for July 11, 2022 at 9:00 a.m. (CT). Pursuant to this Motion, TEC seeks to continue the Backstop Approval Hearing to the week of July 25, 2022[9], or a similar date based on the Court's availability. Because the relief requested in this Motion is required before the regular 21-day notice period, TEC contends that emergency consideration of this Motion is warranted.

**FACTUAL BACKGROUND**

15. On May 9, 2022 (the "**Petition Date**"), the Debtors initiated these chapter 11 cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 23, 2022, the United States Trustee for Region 7 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in this case.

16. Immediately prior to filing the Chapter 11 Cases, on May 9, 2022, the Debtors, at the recommendation of the Restructuring Committee of the Talen Energy Supply, LLC board of managers, entered into a Restructuring Support Agreement (the "**RSA**") with an ad hoc group (the

---

[9] TEC also requests an objection deadline of seven days prior to the hearing date.

"*Unsecured Notes Group*") of holders of the Debtors' senior unsecured notes (the "*Unsecured Notes*"). *See Declaration of Ryan Leland Omohundro in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 16]. Pursuant to the RSA, the Debtors and the Unsecured Notes Group agreed to, among other things, consummate and support a restructuring of the Debtors' capital structure on the terms set forth in the RSA and as specified in the term sheet attached as Exhibit B thereto (the "*Restructuring Term Sheet*," and the transactions contemplated thereby, the "*RSA Restructuring Transactions*"). *See* RSA, Recitals.

17. Pursuant to the Restructuring Term Sheet, the Debtors intend to conduct an up to $1.65 billion equity rights offering available to all holders of Unsecured Notes (the "*Rights Offering*"). The Restructuring Term Sheet contemplates that the Rights Offering will be backstopped by certain members of the Unsecured Notes Group who execute a backstop commitment letter. The terms of the potential backstop commitment were outlined in the RSA but the financing was not committed as of the Petition Date.

18. On May 31, 2022, the Debtors and certain members of the Unsecured Notes Group (the "*Backstop Parties*") executed that certain backstop commitment letter attached as Exhibit B to the Backstop Motion (the "*Backstop Commitment Letter*").[10] Under the Backstop Commitment Letter, the Backstop Parties agree to backstop the Rights Offering up to $1.3 billion, with the option to increase the backstop up to $1.65 billion in the event the Rights Offering is upsized (the "*Backstop Commitment*").

---

[10] Note, the TES board designees appointed by Riverstone are unaware of any board approvals as to the final form of, or entry into, the Backstop Commitment Letter.

19. On June 13, 2022, the Debtors filed the Backstop Motion, seeking entry of an order authorizing them to enter into the Backstop Commitment Letter and approving all obligations and fees payable thereunder.

20. The Restructuring Term Sheet includes certain milestones the Debtors and RSA parties are required to achieve. Those milestones include the following:[11]

 a. <u>no later than 21 days after the Petition Date</u>: the Company and the Backstop Parties shall have entered into the Backstop Commitment Letters and have agreed upon an amended fee letter for the Ad Hoc Group's financial advisor;

 b. <u>no later than 90 days after the Petition Date</u>: the Company shall have filed the (i) Plan, (ii) Motion to Approve the Disclosure Statement, and (iii) Motion to Assume the Backstop Commitment Letters;

 c. <u>no later than 130 days after the Petition Date</u>: the Bankruptcy Court shall have entered (i) the order approving the Disclosure Statement and (ii) the Backstop Approval Order;

 d. <u>no later than 170 days after the Petition Date</u>: the hearing to approve the Confirmation Order shall have commenced; and

 e. <u>no later than 184 days after the Petition Date</u>: the Confirmation Order shall have been entered;

21. Notably, while the milestones in the Restructuring Term Sheet require approval of the Backstop Commitment Letter within 130 days of the Petition Date (*i.e.*, September 16, 2022), the Debtors have contractually shortened that milestone in the Backstop Commitment Letter,

---

[11] Capitalized terms used in this description of the milestones have the meanings given to them in the Restructuring Term Sheet.

which instead requires such approval within 60 days of the execution of the Backstop Commitment Letter (*i.e.*, July 30, 2022).

### RELIEF REQUESTED

22. By this Motion, TEC respectfully requests that the Court continue the Backstop Approval Hearing to the week of July 25, 2022, subject to the Court's availability. TEC further requests that the objection deadline for the Backstop Motion (the "***Objection Deadline***") be extended to seven days prior to the continued hearing date. Such continuance is not sought for purposes of delay, but rather to afford TEC and other parties sufficient time to investigate (including through discovery) and, if necessary, oppose the Backstop Motion.

### BASIS FOR RELIEF

23. This Court has discretion to grant a continuance of the Backstop Approval Hearing and the Objection Deadline as part of its inherent power to control its docket to ensure that cases proceed before it in a timely and orderly manner. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *see also* 11 U.S.C. § 105(a) (setting forth the bankruptcy courts' inherent power to effectuate the provisions of the Bankruptcy Code and ensure that equity and justice prevail).

24. The Debtors have yet to approve and share an updated business plan to reflect recent and material changes in the power market and the impact of post-petition hedging. Because the Debtors did not conduct a pre-petition process to determine how the market values the Debtors and whether any third parties might be interested in pursuing a deal on terms superior to those of the RSA and Backstop Commitment Letter, the discovery related to the Backstop Motion and updated business plan is essential to understanding whether the terms of the RSA Restructuring

Transactions, including the fees under the Backstop Commitment Letter, are fair and reasonable and maximize value for the Debtors' estates and stakeholders.[12]

25.     Despite material upward movement in the power market since the RSA was executed, the Debtors are accelerating their quest for approval of the Backstop Commitment Letter rather than pausing to assess whether the terms of the Backstop Commitment Letter and the other RSA Restructuring Transactions maximize value today. As noted above, the milestones under the Restructuring Term Sheet contemplated filing a motion to approve the Backstop Commitment Letter by no later than 90 days after the Petition Date, with the further requirement that Court approval of the Backstop Commitment Letter must be obtained by September 16, 2022.[13] However, as further noted above, when the Debtors entered into the Backstop Commitment Letter, the milestone for obtaining approval of the Backstop Commitment Letter was brought forward from September 16 to July 30, 2022.[14] With a hearing set even earlier—July 11, 2022—the Debtors have effectively moved the backstop approval milestone forward by over two months.

26.     TEC would be severely prejudiced by the schedule that has been set for the Backstop Motion. The Backstop Commitment Letter requests approval of a termination fee, which has an aggregate value of at least $135 million. If approved, this fee would directly reduce TEC's recovery in these Chapter 11 Cases based on all available evidence in the record to date, including the valuation underpinning the RSA. To preserve the integrity and fairness of the process, the parties-in-interest should be afforded a full opportunity to review, investigate (including through

---

[12] Remarkably, the RSA contractually prohibits the ability of the Debtors to proactively "shop" or run a structured process to canvass or test the market for another value maximizing transaction notwithstanding the Debtors obligation to pay the termination fee. RSA at Section 4.02(c).

[13] Under the RSA, this approval must be obtained by 130 days after the Petition Date. *See* RSA.

[14] Under the Backstop Commitment Letter, this approval must be obtained by 60 days after the signing of the Backstop Commitment Letter. *See* Backstop Commitment Letter

fulsome discovery), and, if necessary, object to the Backstop Motion. The Debtors should not be allowed to truncate that review and objection process arbitrarily, ahead of even their own contractual deadlines which are not binding on this Court.[15]

27. The Debtors would not be prejudiced by the grant of a continuance. Even the Backstop Parties—who have little incentive to provide time for discovery and objections—have not required the motion to be heard on such a short timeline. TEC is not requesting any relief that would not comply with the already-shortened milestone set forth in the Backstop Commitment Letter, as it does not seek to continue the hearing beyond July 30, 2022.

## **CONCLUSION**

28. For the foregoing reasons, TEC respectfully requests that the Court continue the Backstop Approval Hearing and Objection Deadline as set forth herein.

---

[15] Further, the Backstop Motion was filed without the supporting information necessary for the parties-in-interest to fully evaluate and test the relief requested in the Backstop Motion. The Backstop Motion only refers to as-of-yet undisclosed live testimony from a witness from Evercore Group L.L.C. who will presumably testify to the facts and conclusions therein. Until they receive the requested discovery, TEC and other parties-in-interest are at a disadvantage in evaluating the relief sought and the purported grounds for that relief.

Dated:  June 28, 2022
Houston, Texas

        VINSON & ELKINS LLP

        */s/ Paul E. Heath*
        David S. Meyer (admitted *pro hac vice*)
        Jessica C. Peet (admitted *pro hac vice*)
        Lauren R. Kanzer (admitted *pro hac vice*)
        The Grace Building
        1114 Avenue of the Americas, 32nd Floor
        New York, New York 10036-7708
        Tel: (212) 237-0000
        Fax: (212) 237-0100
        dmeyer@velaw.com; jpeet@velaw.com;
        lkanzer@velaw.com

        -and-

        Paul E. Heath (TX 09355050)
        Matthew W. Moran (TX 24002642)
        Matthew D. Struble (TX 24102544)
        Kiran Vakamudi (TX 24106540)
        Texas Tower
        845 Texas Avenue, Suite 4700
        Houston, Texas 77002
        Tel: (713) 758-2222
        Fax: (713) 758-2346
        pheath@velaw.com; mmoran@velaw.com;
        mstruble@velaw.com; kvakamudi@velaw.com

        **COUNSEL FOR TALEN ENERGY CORPORATION**

**CERTIFICATE OF SERVICE**

    I certify that on June 28, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                        */s/ Paul E. Heath*
                                        One of Counsel

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TALEN ENERGY SUPPLY, LLC, *et al.*, | § | Case No. 22-90054 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | Re: Dkt. No. __ |

## ORDER AUTHORIZING CONTINUANCE OF
## HEARING ON DEBTORS' BACKSTOP MOTION

Upon consideration of the *Emergency Motion of Talen Energy Corporation to Continue Hearing on Debtors' Backstop Motion* (the "***Motion***")[2] filed by TEC seeking a continuance of the Backstop Approval Hearing; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that emergency consideration of the Motion is warranted; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

1

1. The Backstop Approval Hearing is hereby rescheduled to July __, 2022 at __ : __ AM / PM Central Time.

2. All objections to the Backstop Motion must be filed no later than July __, 2022 at 5:00 PM Central Time.

3. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:  June __, 2022
Houston, Texas

_____
**MARVIN ISGUR**
**UNITED STATES BANKRUPTCY JUDGE**