**Exhibit B**

**Declaration of Kate Mailloux**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **TALEN ENERGY SUPPLY, LLC** *et al.,* | § | **Case No. 22-90054 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

**DECLARATION OF KATE MAILLOUX IN SUPPORT
OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF TALEN ENERGY SUPPLY, LLC *ET AL*. FOR
ENTRY OF ORDER APPROVING THE RETENTION AND EMPLOYMENT OF
EPIQ BANKRUPTCY SOLUTIONS LLC AS THE COMMITTEE'S
INFORMATION AND NOTICING AGENT, EFFECTIVE AS OF JUNE 27, 2022**

I, Kate Mailloux, being of full age, under penalty of perjury, declare as follows:

1.      I am a Senior Director at Epiq Corporate Restructuring, LLC ("Epiq"), a noticing and information services provider.  I submit this declaration (the "Declaration") on behalf of Epiq in support of the application (the "Application")[2]  of the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors in possession (collectively, the "Debtors"), for an order authorizing the employment and retention of Epiq as the Committee's information and noticing agent, effective as of June 27, 2022, on the terms and conditions set forth in the Application and the Services Agreement.

2.      Except as otherwise stated in this Declaration, I have personal knowledge of the matters set forth herein.  Certain information set forth herein relates to matters (a) contained in Epiq's books and records and (b) within the knowledge of others employed by Epiq and is based

---

[1]     A complete list of the Debtors in these cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/talenenergy.  The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

[2]     Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

on information provided by them.  If called to testify, I could and would testify competently to the facts set forth herein.

3.        On June 10, 2022, the Committee selected Epiq to serve as its information and noticing agent in these cases and, on or around June 27, 2022, executed the Services Agreement, which is attached hereto as **Schedule 1**.

4.        I believe that Epiq is one of the country's leading chapter 11 administrators with a wealth of experience in providing information and noticing services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large chapter 11 cases on behalf of debtors and creditors' committees throughout the United States.  In the normal course of its business, Epiq is often called upon to deliver and serve pleadings and create websites for the purpose of providing access to information to creditors.  I believe that Epiq is well qualified and able to serve the Committee in a cost-effective, efficient and timely manner.

## A.    Scope of Services

5.        Epiq is a company that specializes in, among other things, assisting official creditors' committees in fulfilling their statutory obligations to the unsecured creditor body pursuant to section 1102 of the Bankruptcy Code.  Epiq's retention will assist the Committee in complying with such obligations and help with the effective administration of, and reduce the overall expenses of administering, these cases.  Specifically, Epiq will establish and maintain a website for the Committee and provide technology and communications-related services.  Additionally, Epiq will prepare and serve all notices, orders, pleadings, publications, and other documents as the Committee and/or the Court may deem necessary or appropriate.

## B.   Professional Compensation

6.        Upon the Committee's request, Epiq provided a fee proposal for its services as the Committee's information and noticing agent.

7.     Epiq has agreed to be compensated for its services to the Committee in these cases in accordance with the Services Agreement.  I believe such fees and expenses are reasonable under the proposed engagement and will be administrative in nature and, thus, should be compensated on a monthly basis as an administrative expense.  Each month following the month in which services are rendered, Epiq agrees to submit an invoice for such services to: (i) the Debtors, (ii) counsel to the Debtors, (iii) the U.S. Trustee and (iv) Milbank LLP as counsel to the Committee (collectively, the "Notice Parties").  Epiq understands that, if no objection to an invoice is filed by any of the Notice Parties within fourteen (14) days of receipt thereof, the Debtors would be authorized and directed to pay the full amount of such invoice without the need for Court approval. If any Notice Party dispute the reasonableness of Epiq's invoice, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, such Notice Party and/or Epiq may submit such dispute to the Court for determination, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

## C.  Epiq's Disinterestedness

8.     The Debtors have many creditors, and accordingly, Epiq may have rendered and may continue to render services to certain of these creditors or other parties in interest in matters unrelated to these cases, either as vendors or in cases where Epiq serves in a neutral capacity as a bankruptcy claims and noticing agent or class action settlement administrator.  Epiq has not and will not represent the separate interests of any creditor or another party in interest in these cases. To the best of my knowledge, neither Epiq, nor any of its professional personnel, have any relationship with the Debtors or Committee members that would impair Epiq's ability to serve as the Committee's information agent in these cases.  Epiq has working relationships with certain of the professionals retained by the Debtors and other parties in interest in these cases, but such relationships are completely unrelated to these cases.  In addition, Epiq personnel may have

3

relationships with some of the Debtors' creditors.  Such relationships are, however, of a personal financial nature and are wholly unrelated to these cases.

9.      Epiq has and will continue to represent clients in matters unrelated to the Debtors' cases and has had and will continue to have relationships in the ordinary course of its business with certain parties in interest and professionals in connection with matters unrelated to these cases.

10.     In connection with its retention by the Committee, Epiq searched its client database to determine whether it had any relationships with (i) each party listed on the Potential Parties in Interest list supplied by the Debtors' counsel (the "Debtors' Interested Party List"), and (ii) all other known or potential parties in interest based upon information provided to Epiq by the Committee or that was otherwise publicly available.  A list of the types of entities contained in the Debtors' Interested Parties List is attached hereto as **Schedule 2** and incorporated herein by reference.[3]  To the extent that Epiq's conflict check has revealed that certain potential parties in interest were connected to Epiq, these parties have been identified on a list attached hereto as **Schedule 3**, the Client Match List.  Additionally, Epiq EDiscovery Solutions, Inc appears on the list of potential parties in interest.  Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transaction, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate

---

[3]      Given the length of the Debtors' Interested Party List, **Schedule 2** contains a list of the types of entities that may have contacts with the Debtors is referenced on Exhibit 1 to the declaration of Matthew S. Barr filed in support of the *Application of Debtors for Authority to Retain and Employ Weil, Gotschal & Manges LLP as Attorneys for the Debtors Effective as of the Petition Date* [ECF No. 245].  Additional details of the parties included in such list will be provided upon request.

parent.  At this time, Epiq is not aware of any relationship which would present a disqualifying conflict of interest.  Epiq currently serves, or in the past may have served, in a neutral capacity as claims, noticing, administrative, balloting, and/or solicitation agent for these parties or related parties.  However, given Epiq's neutral position as claims and administrative agent or administrative advisor in the listed-party's cases, or any other cases, Epiq does not view such relationships as real or potential conflicts.  Further, to the best of my knowledge, any such relationship is completely unrelated to these cases.

11.    Epiq is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that neither Epiq nor its professional personnel (a) are not creditors, equity security holders, or insiders of the Debtors, (b) are not and were not, within two (2) years before the date of the filing of these cases, directors, officers, or employees of the Debtors, and (c) do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

12.    Epiq has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, these cases.  If Epiq's proposed retention and employment is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Committee in these cases.  Epiq may, however, provide services to entities or persons that may be creditors or parties in interest in these cases that do not relate to, or have any direct connection with, these cases or the Debtors.

13.    If any new material facts or relationships are discovered, Epiq will supplement its disclosure to the Court.

14.     Epiq has agreed not to share with any other person or firm the compensation it may be paid for professional services rendered in connection with these cases in accordance with section 504(a) of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 25, 2022.

*/s/ Kate Mailloux*
Name:   Kate Mailloux
Title:     Senior Director

## Schedule 1

**Services Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Corporate Restructuring, LLC ("Epiq") and The Official Committee of Unsecured Creditors of Talen Energy Supply, LLC (the "Client") appointed in the jointly administered Chapter 11 cases of Talen Energy Supply, LLC and the other debtors in possession (collectively, the "Debtors") pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), Case No. 22-90054, filed as of May 9, 2022.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq; (b) by Epiq, on ninety (90) days' prior written notice to Client; or (c) automatically upon dissolution of the Client.

**3.  Charges.**

3.1   For the Services and materials furnished by Epiq under this Agreement, the Client shall request payment by the Debtors of the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will provide an invoice to the Debtors with a copy to the Client monthly.  All invoices shall be due and payable by the Debtors' estates within ten (10) days of receipt.



3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2023. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to the Client and the Debtors of such proposed increases.

3.3 Client agrees to request payment by the Debtors' estates for all materials necessary for performance by Epiq of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall request payment or reimbursement by the Debtors' estates of all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall request payment by the Debtors' estates to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, the Debtors' estates shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 In no event shall the Client, any member of or professional for the Client be liable in any capacity for any of Epiq's fees, expenses, costs, damages, indemnity or other liabilities in connection with this engagement.

4. **Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5.  Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by the Debtors' estates do not vest in Client or the Debtors any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

## 6.  Disposition of Data.

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.  Debtors shall not be liable for the use of Client Data in connection with this Agreement.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  The Debtors' estates shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to request payment by the Debtors' estates of reasonable expenses incurred by Epiq as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7.  Indemnification.

The Debtors shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers,



members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client, Debtors and Epiq shall notify each other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which such party is aware with respect to the services provided by Epiq under this Agreement. All requests of Epiq for payment of indemnity pursuant to this Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of this Agreement and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Epiq be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct or fraud.

## 8. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



**9.   Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its Services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**11.  General**

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of both Epiq and the Debtors, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the city and county of New York, to whose jurisdiction Client and Epiq irrevocably submit.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.



11.6   In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

11.7   Neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9   All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.   The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

        If to Epiq:

                Epiq Corporate Restructuring, LLC
                777 Third Avenue, 12th Floor
                New York, New York 10017
                Attn:  Brad Tuttle

        If to Client:

                Official Committee of Unsecured Creditors of Talen Energy Supply, LLC
                Milbank LLP
                55 Hudson Yards
                New York, NY 10001
                Attn: Matthew L. Brod, Esq.
                James McIntyre, Esq.

        If to Debtors:

                Weil, Gotshal & Manges LLP
                767 Fifth Avenue
                New York, NY 10153
                Attn: Matthew S. Barr, Esq.
                Alexander Welch, Esq.
                Katherine Lewis, Esq.

11.11 Invoices should be delivered to the Debtors, with a copy to Client at the following addresses:

                Weil, Gotshal & Manges LLP
                767 Fifth Avenue
                New York, NY 10153
                Attn: Matthew S. Barr, Esq.
                Alexander Welch, Esq.
                Katherine Lewis, Esq.

        Email:        Katherine.Lewis@weil.com

        With a copy to:

                Official Committee of Unsecured Creditors of Talen Energy Supply, LLC
                Milbank LLP
                55 Hudson Yards
                New York, NY 10001



Attn: Matthew L. Brod, Esq.
James McIntyre, Esq.

Email:        JMcIntyre@milbank.com

11.12   The "Effective Date" of this Agreement is June 10, 2022.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:    Senior Managing Director and GM

**ENERFAB POWER & INDUSTRIAL, LLC**

By:  /s/Steven R. Harbison_____

Name:  Steven R. Harbison

Title:   Executive Vice President

**PENSION BENEFIT GUARANTY CORPORATION**

By: /s/Cynthia M. Wong_____

Name: Cynthia M. Wong

Title:   Corporate Finance & Restructuring



# SERVICES SCHEDULE

## WEBSITE SERVICES

➢ Create and maintain a website with general case information provided by the Committee, key documents, claim search function, and mirror of ECF case docket and other case information as requested by the Client.

➢ Website will also contain links to the Debtors' claims agent's website, the Debtors' corporate website, the Bankruptcy Court, and the Office of the United States Trustee.

➢ Provide email functionality whereby viewers may send email inquiries to the Committee to a designated email address.

## NOTICING

➢ Prepare and serve required notices in accordance with case management or other relevant procedures.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update noticing database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

## MISCELLANEOUS

➢ Provide such other noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.



# PRICING SCHEDULE

## ADMINISTRATIVE SERVICES

| Title | Rates |
| --- | --- |
| Clerical/Administrative Support | $23.53 – $51.76 |
| IT / Programming | $51.76 – $70.59 |
| Case Managers | $70.59 – $141.18 |
| Consultants/ Directors/Vice Presidents | $141.18 – $169.41 |

## NOTICING RATES[1]

| | |
| --- | --- |
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED for MSL SERVICES |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
| --- | --- |
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | $500 per month |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

---

[1]   Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

## Schedule 2

## Interested Parties List

Debtors/Affiliates
Debtors' Trade Names and Aliases
Bankruptcy Judges and Staff (for the Southern District of Texas) Clerk of the Court U.S.
Attorney's Office (for the Southern District of Texas)
Banks Bondholders/Noteholders/Indenture Trustees
Bonding and Permitting Authorities
Contract Counterparties Joint Venture Partners
Current Directors/Officers
Known Affiliations of Directors/Officers
Debtors Professionals (law firms, accountants and other professionals)
Former Officers and Directors (include senior management) and Affiliations
Insurance/Insurance Provider
Surety Bonds
Landlords and parties to leases
Lenders (ABL Lenders/Term Loan Lender/Revolver/Collateral Agents/Prepetition and Proposed
Postpetition)
Administrative and Collateral Agents
Hedging Counterparties
Litigation Counterparties/Litigation Pending
Members of Any Ad Hoc Committee and Professionals
Non-Debtor Affiliates/Parent/Subsidiaries
Non-Debtors Professionals (law firms, accountants, and other professionals)
Ordinary Course Professionals
Other Secured Parties (Letters of Credit/Issuers of Letters of Credit)
Other Potential Parties in Interest
Regulatory and Government (Federal, State, and Local)
Significant Competitors
Significant Customers
Significant Shareholders (more than 5% of equity)
Sponsors
Taxing Authorities (Federal, State, and Local; trust fund, use property, franchise, sales)
Third Party Benefits Provider
Top 50 Unsecured Creditors
UCC (Lien Search Results)
Unions
United States Trustee and Staff (Southern District of Texas)
Utility Providers/Utility Brokers
Vendors/Suppliers
Notice of Appearance Party/Interested Party

**Schedule 3**

**Client Match List**

Alix Partners, LLP
Alliancebernstein
Allianz Global Risks US Insurance Company
Almatis, Inc.
Aramark
Armstrong Flooring, Inc.
AT&T Corp
AT&T Mobility
Bank of America, N.A.
Bank of New York
Bank of the West, Trinity Division
Benchmark Industries, Inc.
Bimbo Bakeries USA, Inc.
BNSF Railway Company
Capital Blue Cross
Carrier Corporation
CBL and Associates Management Inc.
Cellco Partnership
Chesapeake Energy Services Inc.
Cintas Corporation
Citi Capital Markets
Citibank N.A.
Citigroup Global Markets Inc.
City of Camden
Comcast
Commonwealth of Pennsylvania
Concentra Medical Centers
Consolidated Industries Inc.
Continental Casualty Company
County of Dauphin
County of York
Credit Suisse
Credit Suisse Securities (USA) LLC
Cummins Inc.
CVS Pharmacy, Inc.
Dell
Deloitte & Touche, LLP
Deutsche Bank AG
Dick's Sporting Goods, Inc.
Dynegy Marketing and Trade LLC
Ernst & Young LLP
ExxonMobil Oil Corporation
First Interstate Bank

Ford Motor Company
General Electric Company
Goldman Sachs
Grainger
Great American Insurance Company
Hewitt Associates LLC
IDT Energy Inc.
Intertek USA, Inc
Itron Inc
JpMorgan Chase Bank, N.A.
K&L Gates LLP
Kirkland & Ellis LLP
KPMG LLP
Luminant Energy Company LLC
M&T Bank Corporation
Magellan Behavioral Health Inc
Measurement Specialties Inc
Members 1st Federal Credit Union
Morgan Stanley & Co. LLC
MPW Industrial Services Group, Inc.
NCI Group, Inc.
Office Depot, Inc.
Ohio Bureau of Workers' Compensation
PIMCO
PricewaterhouseCoopers LLP
RCN
Regions Bank
Republic Services, Inc
Safety-Kleen Systems, Inc.
Stone & Webster Inc.
Sullivan & Cromwell LLP
The Willams Companies, Inc
Travelers Casualty and Surety Company of America
U.S. Bank
U.S. Bank National Association
Verisign, Inc.
Verizon
Verizon Wireless
W.W. Grainger, Inc.
Waste Management
Wilmington Trust
Winston & Strawn LLP
Xerox Corporation