**EXHIBIT C**

**Declaration of Cynthia M. Wong**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| TALEN ENERGY SUPPLY, LLC *et al.*,[1] | § § | Case No. 22-90054 (MI) |
| Debtors. | § § § | (Jointly Administered) |

**DECLARATION OF CYNTHIA M. WONG IN SUPPORT OF
APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING
THE RETENTION OF TUCKER ARENSBERG, P.C.
AS SPECIAL PENNSYLVANIA COUNSEL, EFFECTIVE AS OF JULY 8, 2022**

Cynthia M. Wong, under penalty of perjury, states:

1. I am employed by the Pension Benefit Guaranty Corporation, a member and co-chair of the Official Committee of Unsecured Creditors (the "Committee") of Talen Energy Supply, LLC and certain of its affiliates that are Debtors and Debtors in Possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases").

2. I am authorized to make this declaration in support of the Committee's application (the "Application")[2] seeking authorization to retain Tucker Arensberg, P.C. ("Tucker Arensberg") as special Pennsylvania counsel for the Committee pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Local Rule 2014-1.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Application.

1

3. This declaration is provided pursuant to the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "UST Guidelines").  Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by Tucker Arensberg.

4. I am informed by Tucker Arensberg that the UST Guidelines requires that any application for employment of an attorney under 11 U.S.C. §§ 327 or 1103 be accompanied by a verified statement from the client that addresses the following:

(i) The identity and position of the person making the verification. The person ordinarily should be the general counsel of the debtor or another officer responsible for supervising outside counsel and monitoring and controlling legal costs.

(ii) The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

(iii) The number of firms the client interviewed.

(iv) If the billing rates are not comparable to the applicant's billing rates for other non-bankruptcy engagements and to the billing rates of other comparably skilled professionals, the circumstances warranting the retention of that firm.

(v) The procedures the client has established to supervise the applicant's fees and expenses and to manage costs. If the procedures for the budgeting, review and approval of fees non-bankruptcy cases to supervise outside counsel, explain how and why. In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

### Identity of Declarant

5. As a Corporate Finance & Restructuring representative of the Pension Benefit Guaranty Corporation, a member and co-chair of the Committee, I was directly involved in the

Committee's decision to retain Tucker Arensberg and actively participated in negotiating the terms of Tucker Arensberg's employment together with the other members of the Committee.

### Steps Taken to Ensure the Comparability of Engagement Terms

6. Tucker Arensberg has informed the Committee that its rates for bankruptcy representations are comparable to the rates it charges for non-bankruptcy representations, and that Tucker Arensberg endeavors to set its hourly rates for attorneys and paraprofessionals at levels competitive to those charged by its peer firms.

### Committee's Selection of Counsel

7. The Committee evaluated the credentials of several law firms to represent the Committee as special Pennsylvania counsel in these Chapter 11 Cases. The Committee found Tucker Arensberg to be uniquely qualified for the present engagement. As described in the Application, Tucker Arensberg maintains a diverse practice with expertise in virtually all areas of law that may be relevant in these cases. Importantly, Tucker Arensberg has particular expertise in Pennsylvania law and has litigated numerous Pennsylvania state cases to successful conclusions. Therefore, it is the Committee's opinion that Tucker Arensberg's capabilities and expertise will enable it to faithfully execute its responsibilities to the Debtors' unsecured creditors.

### Rate Structure

8. Tucker Arensberg has informed the Committee that its hourly rates are subject to periodic adjustments to reflect economic and other conditions. Tucker Arensberg has advised me that they will inform the Committee in advance of any such adjustments to their existing rate structure. Further, I have been specifically advised by Tucker Arensberg that, pursuant to ABA Formal Ethics Opinion 11-458, "periodic, incremental increases in a lawyer's regular hourly billing rates are generally permissible if such practice is communicated clearly to and accepted by

the client at the commencement of the client-lawyer relationship and any periodic increases are reasonable under the circumstances." I have also been specifically advised by Tucker Arensberg that, pursuant to ABA Formal Ethics Opinion 11-458, "the client need not agree to pay the modified fee to have the lawyer continue the representation." To the extent Tucker Arensberg seeks to make any such adjustment to its rate structure, the Committee expressly reserves the right to reject any such modification to the extent the Committee deems it unreasonable.

### Cost Supervision

9.     The Committee recognizes its responsibility to closely monitor Tucker Arensberg's billing practices to ensure the fees and expenses paid by the estate remain consistent with the Committee's expectations and the exigencies of these Chapter 11 Cases. Accordingly, the Committee will work with Tucker Arensberg to develop a prospective budget and staffing plan, which the Committee intends to review on an ongoing basis, as necessary. The Committee will also review Tucker Arensberg's invoices and any applications for payment of fees and reimbursement of expenses that it submits to the Court. In addition, Tucker Arensberg's fees and expenses will be subject to review, comment, objection (if warranted), and Court approval pursuant to the Interim Compensation Order.

10.    Except as noted above, nothing contained herein is intended to limit Tucker Arensberg's ability to request allowance and payment of fees and expenses pursuant to 11 U.S.C. §§ 330 and 331, nor to restrict Tucker Arensberg's right to defend any objection raised to the allowance or payment of such fees, nor to restrict the Committee's right to retain conflicts counsel to prosecute any such fee objection to the extent it is not resolved informally by the parties or raised by another party in interest, such as the U.S. Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 27, 2022

By: /s/ Cynthia M. Wong

*Co-Chair of the Official Committee of Unsecured Creditors*