IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| TALEN ENERGY SUPPLY, LLC, *et al.*, | § § | Case No. 22-90054 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**SUPPLEMENT TO DISCLOSURE STATEMENT FOR JOINT CHAPTER 11
PLAN OF TALEN ENERGY SUPPLY, LLC AND ITS AFFILIATED DEBTORS**

> **RECOMMENDATION BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
>
> The Debtors and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") support confirmation of the Plan.  The Debtors urge all creditors whose votes are being solicited to vote to **ACCEPT** the Plan, including the modifications described herein.  The Debtors believe the Plan is in the best interests of all stakeholders and provides the highest and best recovery for all creditors.
>
> The Creditors' Committee believes that, under the facts and circumstances of these Chapter 11 Cases, the confirmation of the Plan is in the best interests of the Debtors' unsecured creditors and recommends that all unsecured creditors vote to **ACCEPT** the Plan.  You are encouraged to read the Creditor's Committee's recommendation, which is attached hereto as **Exhibit A**.
>
> Additionally, the following parties have agreed to support and/or vote in favor of the Plan, subject to the terms and provisions of that certain *Restructuring Support Agreement* dated as of May 9, 2022 (including any exhibits thereto and as subsequently amended and as may be further modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**RSA**"):
>
> - holders of approximately 83% of the aggregate outstanding principal amount of the Unsecured Notes;
>
> - holders of approximately 86% in aggregate principal amount of Claims under the Debtors' Prepetition CAF Agreement;

---

[1] A complete list of the Debtors in the chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/talenenergy.  The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

> - holders of approximately 98% in aggregate principal amount of Claims under the Debtors' Prepetition TLB Agreement;
> - holders of approximately 48% of the aggregate outstanding principal amount of the Secured Notes; and
> - the holder of 100% of the TES Existing Equity Interests and the holders of 100% of TEC Existing Equity Interests.

## I. EXECUTIVE SUMMARY

Talen Energy Supply, LLC ("**TES**") and its debtor affiliates in the above-captioned chapter 11 cases (each, a "**Debtor**" and, collectively, the "**Debtors**") have filed an amended *Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors*, dated November 28, 2022 (including any exhibits and schedules thereto and as may be further modified, amended, or supplemented from time to time, the "**Plan**") to reflect the following:

i. the terms of the Global Plan Settlement (as defined below) that was reached between (i) the Debtors, (ii) the Consenting Parties,[2] (iii) the CAF Consenting Parties, (iv) the First Lien Non-CAF Consenting Parties, (v) the TEC Consenting Parties, (vi) the Creditors' Committee, and (vii) the GUC Trustee (collectively, the "**Global Settlement Parties**") following a successful mediation held by the Honorable Judge David R. Jones;

ii. Talen Energy Corporation ("**TEC**") anticipates filing a chapter 11 petition to become a Debtor and will join the Plan in order to effectuate certain Restructuring Transactions, with all of TEC's creditors to remain unimpaired by the Plan; and

iii. the removal of provisions in the Plan relating to a potential Sale Transaction given that the Bid Deadline passed on November 14, 2022 and the Debtors did not receive any Qualified Bids, as announced in the *Notice of No Qualified Bids and Cancellation of Auction*, filed on November 17, 2022 [Docket No. 1523].

The Debtors hereby submit for creditors' consideration this supplement to the Disclosure Statement (this "**Supplement**") that introduces and describes changes made to the Plan, the impact on estimated recoveries, and other important disclosures regarding the Plan.

In addition, the Debtors ask any party that has already voted on the Plan to weigh carefully the improved treatment and recoveries offered to unsecured creditors in determining whether to vote to accept the Plan prior to the Voting Deadline, which has been extended from December 6, 2022 to **December 9, 2022 at 5:00 p.m. CT** (the "**Extended Voting Deadline**"). Most notably, the Plan contains enhanced recoveries for Holders of General Unsecured Claims in Class 5A, an increased threshold for General Unsecured Convenience Claims in Class 6, and

---

[2] Capitalized terms used in this Supplement, but not defined herein, have the meanings ascribed to them in the Disclosure Statement or Plan, as applicable. To the extent any inconsistencies exist between this Supplement or the Disclosure Statement and the Plan, the Plan will govern.

improved treatment for Holders of Claims asserted for damage caused directly or indirectly by Winter Storm Uri (such timely asserted Claims, the "**Uri Claims**"), which have been separated into a new Class 5B (Classes 5A, 5B, and 6, together with Classes 3A, 3B, and 4, collectively, the "**Voting Classes**" or "**Voting Claims**").

A. <u>**October 26 Plan and Solicitation**</u>

On October 26, 2022, the Bankruptcy Court entered an order [Docket No. 1415] (the "**Disclosure Statement Order**") that, among other things, approved the *Disclosure Statement to Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors*, dated October 26, 2022 [Docket No. 1417] (including any exhibits and schedules hereto and as may be further modified, amended, or supplemented, the "**Disclosure Statement**"), which is incorporated herein by reference.

Upon entry of the Disclosure Statement Order, the Debtors commenced solicitation of the *Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors*, dated October 26, 2022 (including any exhibits and schedules thereto, the "**October 26 Plan**") by mailing copies of the applicable Ballot, Disclosure Statement, October 26 Plan, and other approved solicitation materials to Holders of Claims in Class 3A (Prepetition First Lien Non-CAF Claims), Class 3B (Prepetition CAF Claims), Class 4 (Unsecured Notes Claims), Class 5 (General Unsecured Claims), and Class 6 (General Unsecured Convenience Claims).

B. <u>**Global Plan Settlement and Plan Modifications**</u>

On November 17, 2022, the Global Settlement Parties reached an agreement in principle with respect to a global settlement of all of the Creditors' Committee's outstanding issues in these Chapter 11 Cases, including those related to the October 26 Plan and the settlements contemplated thereunder (the "**Global Plan Settlement**" and, collectively with the CAF Settlement, the First Lien Non-CAF Settlement, and the TEC Global Settlement, the "**Plan Settlements**"). On November 28, 2022, the Debtors filed the Plan reflecting the terms of the Global Plan Settlement and certain other modifications described herein (collectively, the "**Plan Modifications**"). An updated table summarizing the treatment, classification and impairment of Claims is attached hereto as **Exhibit B** (the "**Plan Treatment Summary**"), a copy of the Plan is attached hereto as **Exhibit C**, and a redline reflecting the Plan Modifications, as compared to the October 26 Plan, is attached hereto as **Exhibit D**. A supplemental disclosure of certain tax consequences associated with the Plan Modifications is also attached hereto as **Exhibit E** (the "**Tax Disclosures**").

The Global Plan Settlement includes the following terms and conditions, which are incorporated in the Plan, as amended:

1. *General Unsecured Claims and GUC Trust*

Under the Debtors' October 26 Plan, Holders of Allowed General Unsecured Claims in Class 5 were entitled to an aggregate recovery of $2 million, as allocated according to the Value Allocation methodology attached as <u>Exhibit A</u> thereto (the "**Value Allocation**"). As a result of the Global Plan Settlement, Holders of Allowed General Unsecured Claims in Class 5A will receive improved treatment. The Plan, as amended, provides for the establishment of a trust on the Effective Date to administer, process, settle, resolve, liquidate, satisfy, and pay General

3

Unsecured Claims and General Unsecured Convenience Claims (the "**GUC Trust**"). The GUC Trust's assets will be comprised of the following:

   i.   $26.05 million in Cash (the "**GUC Cash Pool**");[3]

   ii.  ten percent (10%) of the net proceeds, if any, recovered by the Debtors pursuant to the PPL Adversary Proceeding, subject to a cap of $11 million (the "**GUC PPL Recovery Pool**");

   iii. $200,000 in Cash, which shall be used for purposes of making distributions to Holders of Allowed General Unsecured Convenience Claims (the "**General Unsecured Convenience Claims Fund**"); and

   iv.  the Committee Budget Excess, if any (and, collectively with the GUC Cash Pool, the GUC PPL Recovery Pool, and General Unsecured Convenience Claims Fund, the "**GUC Trust Assets**").

Under the Global Plan Settlement, each Holder of an Allowed General Unsecured Claim will receive an interest in the GUC Trust which shall entitle such Holder to receive, in full and final satisfaction of its Allowed General Unsecured Claim, a share of the GUC Trust Assets net of the General Unsecured Convenience Claims Fund and after the amounts necessary to administer the GUC Trust (the "**GUC Trust Expenses**") have been paid in full or otherwise reserved for. For the avoidance of doubt, Holders of General Unsecured Claims will no longer receive New Common Equity or Rights Offering Subscription Rights on account of their Allowed Claims.

The GUC Trust Assets will be allocated in a manner determined by the GUC Trustee in accordance with the GUC Settlement Allocation (each as defined below) and the Plan. A table developed by the Creditors' Committee to demonstrate the estimated Allowed amounts and approximate percentage recoveries to Holders of General Unsecured Claims on an aggregate basis at each Debtor entity is attached hereto as **Exhibit F** (the "**GUC Settlement Allocation**"). Although the Creditors' Committee has informed the Debtors that aspects of the methodology for allocating the GUC Trust Assets is privileged, the Debtors have reviewed the GUC Settlement Allocation and confirmed that each Holder of an Allowed General Unsecured Claim will receive a recovery that is greater than the amount such Holder would have otherwise been entitled to receive under the Value Allocation as set forth in Exhibit A to the October 26 Plan. For the avoidance of doubt, the Debtors' view of Value Allocation as set forth in Exhibit A to the October 26 Plan has not changed. The incremental value going to the Holders of General Unsecured Claims pursuant to the GUC Settlement Allocation as compared to the Value Allocation is as a result of the additional consideration negotiated by the Creditors' Committee pursuant to the Global Plan Settlement.

---

[3] The GUC Cash Pool shall be funded as follows: (a) Debtors: $23.05 million, (b) CAF Consenting Parties: $2 million (through the reduction of the Settled CAF Claim Amount, as defined in the October 26 Plan), and (c) Riverstone: $1 million. Notwithstanding the foregoing allocations, the GUC Cash Pool shall be fully funded by the Debtors or the Reorganized Debtors, as applicable, and shall be paid to the GUC Trust in accordance with the provisions of Article IV.N.5 of the Plan. Riverstone shall pay its $1 million contribution in Cash to the Debtors prior to or in conjunction with the Effective Date.

The GUC Trust will be administered by a trustee (the "**GUC Trustee**").  Further information about the GUC Trust can be found in Article IV.N of the Plan.

### 2. *Treatment of General Unsecured Convenience Claims*

As amended, the Plan provides that Class 6 (General Unsecured Convenience Claims) will consist of Claims that are Allowed in the amount of $2,000 or less that would otherwise be Allowed General Unsecured Claims.  Holders of Allowed Claims in Class 6 (General Unsecured Convenience Claims) will receive a Pro Rata share of a $200,000.00 cash pool, with such Pro Rata share to be determined based on the aggregate amount of all Allowed General Unsecured Convenience Claims against all Debtors.  The treatment of General Unsecured Convenience Claims is described in greater detail in **Exhibit B** attached hereto and in Article III.B of the Plan.

### 3. *Treatment of Winter Storm Uri Claims*

As disclosed in the Disclosure Statement, at least 35,464 Uri Claims have been filed against the Debtors for damage allegedly caused (directly or indirectly) by Winter Storm Uri, including 33,690 tort claims and 1,774 subrogation claims.  As amended, the Plan provides for the separate classification and treatment of the Uri Claims in Class 5B.  As set forth in Article III.B and Article VI.F.3 of the Plan, notwithstanding any injunction or similar provision contained in the Plan, except to the extent that a Holder of a Uri Claim agrees in writing with the GUC Trust to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Uri Claim:

   i. the Holder of a Uri Claim may pursue such Uri Claim to final judgment, including any appeals, in any court(s) having competent jurisdiction, or settlement.  Any such final judgment or settlement will be satisfied solely to the extent of any available insurance proceeds from any Uri Claim Carrier, and the provisions of Article III.B.7(b)(ii) of the Plan.  The applicable Debtors may be named in the litigation as a party defendant(s) subject to the provisions in the Plan.  Nothing in the Plan, the Plan Supplement, or any Definitive Document releases the applicable Debtor(s) from their liability for Uri Claims to the extent of the amount of available insurance and the provisions of Article III.B.7(b)(ii) of the Plan.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or any Definitive Document, effective as of the Effective Date, the Debtors shall be discharged of all Uri Claims pursuant to section 1121(d) of the Bankruptcy Code, and all Holders of Uri Claims shall solely be entitled to the treatment provided in Article III.B.7 of the Plan.  Neither the GUC Trust nor the GUC Trustee may be named as a party to any such litigation.

   ii. To the extent that any applicable insurance policy issued to the Debtor(s) by an Uri Claim Carrier contains a SIR, such SIR on an Allowed Uri Claim shall be paid, satisfied, settled and discharged by the allowance of a Class 5A General Unsecured Claim in the amount of the applicable SIR.  The GUC Trustee may file such motions with the Bankruptcy Court as it deems appropriate for the administration of SIR claims.

As set forth in Section IX.B.9 of the Disclosure Statement, the Debtors dispute liability with respect to the Uri Claims and reserve all rights and defenses with respect thereto. Moreover, although the Debtors believe that all or certain of the Uri Claims may be covered by their general liability and excess liability insurance policies, certain of the Uri Claim Carriers have disputed coverage for claims related to Winter Storm Uri.

### 4. *No Changes to Treatment of Prepetition First Lien Non-CAF Claims (Class 3A) and Prepetition CAF Claims (Class 3B)*

No changes have been made to the treatment of Holders in Class 3A (Prepetition First Lien Non-CAF Claims) and Class 3B (Prepetition CAF Claims). However, as reflected in Article I.A.284 of the Plan, the Settled CAF Claim Amount has been reduced by $2 million pursuant to the Global Plan Settlement.

### 5. *Commitments to Support the Plan and Other Relief Requested by Debtors*

The Creditors' Committee has agreed to (i) support the Plan, as amended to reflect the Global Plan Settlement; (ii) not file or make any objection contrary to or against the relief sought by the Debtors in relation to the Plan; (iii) stipulate to stay the CAF Standing Motion, Riverstone Standing Motion, CAF Claim Objection, and all deadlines related thereto, as reflected in the *Stipulation and Agreed Order Staying Committee's Standing Motions and CAF Claim Objection* entered by the Court on November 28, 2022 [Docket No. 1569]; and (iv) support the Debtors' assumption of the LoBiondo Employment Agreement (as amended) between TES and Leonard LoBiondo upon the confirmation of the Debtors' Plan.[4]

### 6. *Claims Reconciliation*

As amended, the Plan provides that, from the Confirmation Date to the Effective Date, the Creditors' Committee will handle reconciling, settling, and administering the General Unsecured Claims and General Unsecured Convenience Claims (except for the Excluded Litigation Matters, as defined herein). The Debtors will pay the reasonable and documented fees and costs the Creditors' Committee incurs from the Confirmation Date through the Effective Date for claims reconciliation, claims objections, consultation, or monitoring these Chapter 11 Cases in connection with the Debtors' prosecution of Estate Claims or Causes of Action (the "**Committee Expenses**"), subject to a cap of $500,000 in Cash (the "**Committee Budget**"). Any unused amounts remaining in the Committee Budget on the Effective Date shall be transferred by the Reorganized Debtors to the GUC Trust as GUC Trust Assets promptly upon written request by the GUC Trustee to the Reorganized Debtors. To the extent the Committee Expenses incurred at any time exceed the Committee Budget, such amounts shall be paid from the GUC Trust Assets.

Upon the Effective Date, the GUC Trustee will assume the Creditors' Committee's role with respect to the General Unsecured Claims and General Unsecured Convenience Claims. The

---

[4] The LoBiondo Employment Agreement is described in further detail in the Disclosure Statement and the *Debtors' Motion for Entry of an Order Authorizing Debtors to (I) Assume Employment Agreement and (II) Perform All Obligations Thereunder* [Docket No. 1010], filed on August 3, 2022.

reasonable fees and expenses of the GUC Trustee and its professionals will be paid from the GUC Trust Assets, except as otherwise provided in the GUC Trust Agreement.

The Debtors or the Reorganized Debtors will continue to defend or prosecute, at their sole expense, the following litigation matters: (i) Asbestos Claims; (ii) Kinder Morgan Litigation; (iii) Montana Hydroelectric Litigation; (iv) Pension Litigation; (v) PPL Adversary Proceeding; (vi) the action brought in December 2020 by Richard Burnett and Colstrip Properties, Inc. against Talen Montana and non-Debtor Does 1–10 seeking compensatory and punitive damages for personal injury and property damage allegedly caused by the Colstrip Project, as subsequently amended to add the Co-Owners and Westmoreland Rosebud Mining LLC as defendants and approximately 100 additional plaintiffs (the "**Burnett Litigation**"); and (vii) the Colstrip Arbitration ((i)–(vii) collectively, the "**Excluded Litigation Matters**").

### 7. *Other Plan Amendments*

The Debtors have made a number of other updates to the Plan in accordance with the Global Plan Settlement, including, without limitation, the following amendments:

- Setoff Rights: Article VI.K of the Plan, as amended, provides that the Debtors, the Reorganized Debtors, or the GUC Trust, as applicable, may only exercise setoff against or recoupment from any Claims against the Debtors if either (i) the applicable creditor consents *or* (ii) the Bankruptcy Court approves such setoff or recoupment. The Plan was also amended to reflect that any Holder of Claims against the Debtors is not entitled to exercise setoff of such Claims against the Debtors, the Reorganized Debtors, or the GUC Trust unless (a) the Debtors or Reorganized Debtors, as applicable, and the Requisite Consenting Parties have consented, or the GUC Trust has consented, as applicable, *or* (b) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

- Releases and Exculpations: The Creditors' Committee, its members, and its advisors will receive releases under the Plan and the Creditors' Committee and its members will receive an exculpation, in each case, subject to Bankruptcy Court approval. The full text of the Plan's release, exculpation, and injunction provisions are included in Article VIII of the Plan.

- Distributions on Account of Disputed Claims: The provision providing that an entity with both an Allowed Claim and a Disputed Claim would not receive any distribution on account of its Allowed Claim unless and until the Disputed Claim was resolved has been deleted.

- Creditors' Committee Consent Rights: As amended, the Plan provides that the Plan, Plan Supplement, and Confirmation Order will be in a form reasonably acceptable to the Creditors' Committee, solely to the extent relating to the consideration or

rights negotiated by the Creditors' Committee pursuant to the Global Plan Settlement.

Other aspects of the Global Settlement are described in <u>Article IV.P</u> of the Plan.

**C.      Additional Events and Related Plan Modifications**

In addition to the modifications to the Plan to reflect the Global Plan Settlement, the Plan also incorporates certain other Plan Modifications to address updates to (i) the Sale Process and (ii) the identity of New Parent and the TEC Chapter 11 Filing (as defined below).

  1.      *Sale Process*

Pursuant to the RSA First Amendment, on August 26, 2022, the Debtors launched the Sale Process to solicit, initiate, facilitate, encourage, develop and negotiate one or more proposals for an alternative restructuring to the Equitization Transaction.  On October 26, 2022, the Bankruptcy Court entered the Disclosure Statement Order, approving, among other things, the *Bidding Procedures* annexed as <u>Exhibit 2</u> to the Disclosure Statement Order (the "**Bidding Procedures**"). The Bidding Procedures set a deadline for Third-Party Bidders to submit Qualified Bids by November 14, 2022 at 4:00 p.m. (prevailing Central Time) (the "**Bid Deadline**").

The Debtors did not receive any Qualified Bids by the Bid Deadline, and therefore elected to cancel the previously scheduled Auction and to move forward with the Equitization Transaction, which is described in detail in the Disclosure Statement.  Accordingly, the Debtors have modified the Plan to remove all references to the Sale Process, Sale Transaction, Post-Sale Estates, Third-Party Bids, and related terms.

  2.      *New Parent and TEC Filing*

At the time of filing the Disclosure Statement, the Debtors had not determined whether New Parent would be TEC, TES, or another entity.  The Disclosure Statement disclosed that, to the extent New Parent would be TEC, TEC might file a chapter 11 petition and become a Debtor in order to implement the Restructuring, the specifics of which would be included in the Plan Supplement.

The Debtors, together with TEC, subsequently determined that New Parent will be TEC, and that TEC anticipates filing a voluntary chapter 11 petition in advance of the Confirmation Hearing and may seek limited first-day relief at the Confirmation Hearing.  The Debtors have made several Plan Modifications to address this development, including the modification and/or addition of the following Plan definitions:

- "*New Parent*" means Reorganized TEC, the ultimate direct and indirect parent of the Reorganized Debtors.

- "*Reorganized TEC*" means TEC on or after the Effective Date.

- "*TEC Creditor Claim*" means any Claim held against TEC, but which shall not, for the avoidance of doubt, include any General Unsecured Claims, General Unsecured Convenience Claims, or any Uri Claims.

- "*TEC Existing Equity Interests*" means Interests in TEC.

- "*TEC General Bar Date*" means the deadline by which all Entities, except Governmental Units, shall File Proofs of Claim against TEC, as shall be established by the applicable Bar Date Order.

- "*TEC Governmental Bar Date*" means the date that is one hundred and eighty (180) days after the TEC Petition Date, which is the deadline by which all Governmental Units shall File Proofs of Claim against the TEC, as established by Bankruptcy Local Rule 3003-1 and ratified by the applicable Bar Date Order.

- "*TEC Petition Date*" means the date on which TEC commences its Chapter 11 Case.

The Debtors have added two additional Classes of Claims and Interests in connection with TEC's prospective filing of a chapter 11 petition: (i) Class 12, consisting of all TEC Creditor Claims, which will be Unimpaired; and (ii) Class 13, consisting of all TEC Existing Equity Interests, which will be extinguished upon the Effective Date. The treatment of Claims and Interests in Classes 12 and 13 are set forth in the treatment chart attached as **Exhibit B** hereto and in Article III.B of the Plan. Holders of TEC Creditor Claims and TEC Existing Equity Interests will receive a Notice of Non-Voting Status and Opt-Out Form.

The Debtors anticipate entering into that certain *Amended and Restated Fifth Amendment and Limited Joinder to Restructuring Support Agreement* (the "**Amended and Restated RSA Fifth Amendment**") on or around November 29, 2022. The Debtors expect that pursuant to the Amended and Restated RSA Fifth Amendment, TEC will agree to (i) commence a voluntary case under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "**TEC Chapter 11 Filing**"), on a date no later than December 14, 2022, (ii) request joint administration with the Chapter 11 Cases and confirmation of the Plan, and (iii) retain Weil in connection with such filing. Consistent with the TEC Global Settlement Term Sheet, the Amended and Restated RSA Fifth Amendment will provide that, prior to the TEC Chapter 11 Filing, TES agrees to pay certain reasonable and documented fees and transaction expenses incurred by the professional advisors to TEC, the Cumulus Affiliates, and/or Riverstone, in accordance with the Plan and the Amended and Restated RSA Fifth Amendment. Accordingly, the Debtors intend to file the *Emergency Motion of Debtors for Order (I) Authorizing Debtors to Satisfy TEC Expense Reimbursement and (II) Granting Related Relief* requesting authority to pay such fees and expenses in advance of the TEC Chapter 11 Filing.

9

## II.
## VOTING PROCEDURES AND REQUIREMENTS

A. **Important Deadlines**

Please take note of the following important dates and deadlines, including the Extended Voting Deadline of December 9, 2022 at 5:00 p.m. (prevailing Central Time):

| | |
|---|---|
| Plan Supplement Filing | November 29, 2022<br>11:59 p.m. (prevailing Central Time) |
| Deadline to Object to Confirmation of Plan | December 6, 2022<br>5:00 p.m. (prevailing Central Time) |
| **Extended Voting Deadline**[5] | **December 9, 2022**<br>**5:00 p.m. (prevailing Central Time)** |
| Deadline to File (i) Reply to Plan Objection(s) and (ii) Brief in Support of Plan Confirmation | December 12, 2022<br>12:00 p.m. (prevailing Central Time) |
| Confirmation Hearing[6] | December 15, 2022<br>9:00 a.m. (prevailing Central Time) |

B. **Extended Voting Deadline**

Before voting to accept or reject the Plan, you should carefully review the Plan, attached hereto as **Exhibit C**, including the modifications described herein, the Disclosure Statement, and this Supplement. All descriptions of the Plan set forth in this Supplement are subject to the terms and conditions of the Plan.

All Holders in Voting Classes have been sent a ballot to vote to accept or reject the Plan (the "**Ballot**") together with the Disclosure Statement. Holders in Class 5A, Class 5B, and Class 6 are being provided with new Ballots contemporaneous with this Supplement. Such Holders should read the Ballot carefully and follow the instructions contained therein. Each Ballot contains detailed voting instructions and sets forth in detail, among other things, the deadlines, procedures, and instructions for voting to accept or reject the Plan, the Voting Record Date for voting purposes, and the applicable standards for tabulating Ballots.

**FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE EXTENDED VOTING DEADLINE OF 5:00 P.M. (PREVAILING CENTRAL TIME) ON DECEMBER 9, 2022, UNLESS EXTENDED BY THE DEBTORS.**

**IF YOU PREVIOUSLY SUBMITTED A BALLOT WITH RESPECT TO THE OCTOBER 26 PLAN AND DO NOT WISH TO CHANGE YOUR VOTE, THERE IS NO NEED TO TAKE ANY ACTION AND YOU DO NOT NEED TO SUBMIT A NEW**

---

[5] The Debtors may, in their sole discretion, extend the Voting Deadline without further order of the Bankruptcy Court.

[6] The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court or the upon written notice, except for adjournments announced in open court.

**BALLOT. IF YOU ARE A MEMBER OF A VOTING CLASS AND (A) HAVE NOT ALREADY VOTED AND WOULD LIKE TO VOTE TO ACCEPT OR REJECT THE PLAN OR (B) HAVE ALREADY VOTED BUT WOULD LIKE TO CHANGE YOUR VOTE, YOU MAY DO SO BY SUBMITTING A BALLOT.**

### C. Notice of Non-Voting Status

Holders in Classes 1, 2, 7, 8, 10, and 12 are Unimpaired and deemed to accept the Plan. Holders of Section 510(b) Claims in Class 9, TES Existing Equity Interests in Class 11, and TEC Existing Equity Interests in Class 13 are Impaired and deemed to reject the Plan. Accordingly, Holders of Claims and Interests in Classes 1, 2, 7, 8, 9, 10, 11, 12 and 13 will not receive a Ballot. Holders of Claims and Interests in Classes 1, 2, 9, 11, 12 and 13 have been served or will be served with a notice informing them of their non-voting status (the "**Notice of Non-Voting Status**"). With respect to Classes 7, 8 and 10, the Debtors received a waiver of any requirement to serve any type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' Affiliates and are Unimpaired by the Plan.

### D. Opt-Out Form

In addition to receiving a Notice of Non-Voting Status, Holders of Unimpaired Claims and Interests will receive a form to complete and return if the party elects to opt out of the releases contemplated by the Plan ("**Opt-Out Form**"). To the extent a Holder of an Unimpaired Claim or Interest wishes to elect to opt-out of the releases, such Holder must return the Opt-Out Form, with the box checked indicating such Holder is electing to opt-out of the releases, to the Solicitation Agent **before 5:00 p.m. (prevailing Central Time) on December 9, 2022**.

### E. Further Information, Additional Copies

If you have any questions or require further information about the voting procedures for voting your Claim, or about the packet of material you received, or if you wish to obtain an additional copy of the Plan, this Disclosure Statement, this Supplement, or any exhibits to such documents, please contact the Solicitation Agent at:

**Kroll Restructuring Administration LLC**
**Telephone: (844) 721-3899 (toll free from U.S. or Canada)**
**or +1 (347) 292-4080 (international)**
**E-mail: talenenergyinfo@ra.kroll.com (with "Talen" in the subject line)**

### III.
### CONCLUSION AND RECOMMENDATION

The Debtors believe the Plan is in the best interests of all stakeholders and urge the Holders of Claims in Classes 3A, 3B, 4, 5A, 5B, and 6 to vote in favor thereof.

11

Dated: November 28, 2022
Houston, Texas

Respectfully submitted,

/s/ *Leonard LoBiondo*

Name: Leonard LoBiondo
Title:  Executive Vice President

on behalf of

Talen Energy Supply, LLC


/s/ *Andrew Wright*

Name: Andrew M. Wright
Title:  Authorized Signatory

on behalf of

each of the Debtor affiliates of Talen Energy Supply, LLC

*[Signature Page to Supplement to Disclosure Statement for Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors]*