IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TALEN ENERGY SUPPLY, LLC *et al.,* | § | Case No. 22-90054 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | Re: Docket No. 1694 |
| | § | |

**DECLARATION OF ANDREW SCRUTON
IN SUPPORT OF GUC SETTLEMENT ALLOCATION
IN CONNECTION WITH JOINT CHAPTER 11 PLAN OF TALEN ENERGY
SUPPLY, LLC AND ITS AFFILIATED DEBTORS**

I, Andrew Scruton, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1. I am a Senior Managing Director at FTI Consulting, Inc., (together with its wholly owned subsidiaries, "FTI"), a financial advisory services firm that provides, among other things, restructuring, crisis and turnaround management services. FTI is the financial advisor for the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"). In my capacity as a Senior Managing Director, I am authorized to make and submit this declaration (the "Declaration") on behalf of FTI and in connection with the *Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors* [Dkt. No. 1694] (as may be amended or supplemented, the "Plan").[2]

---

[1] A complete list of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/talenenergy. The Debtors' primary mailing address is 1780 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas 77380.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

2. This Declaration concerns the allocation among Debtors of the assets available for distribution to Holders of Allowed Class 5A Claims (the "GUC Settlement Allocation"); as set forth in the Plan, the GUC Settlement Allocation determines the distribution of the GUC Trust Net Assets among Holders of Allowed General Unsecured Claims in Class 5A. This Declaration briefly describes the methodology used to develop the GUC Settlement Allocation.

3. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon (a) my personal knowledge of the Debtors' industry, management team and current situation, (b) information received from members of the Debtors' management or their advisors, (c) FTI's analyses regarding the Debtors' Plan, (d) discussions with certain other professionals at FTI, Moelis, and the Committee's legal advisors, (e) my review of the relevant documents, and (f) my more than 30 years of experience in providing restructuring, corporate finance, accounting and financial advisory services. I am not being compensated specifically for this testimony other than through payments received by FTI as a professional retained by the Committee in the Chapter 11 Cases. If called upon to testify, I would testify to the facts and opinions set forth herein.

**Professional Background and Qualifications**

4. I am a Senior Managing Director at FTI, where I specialize in Corporate Finance and Restructuring. I have held that position for approximately sixteen years. Before joining FTI, I was a founding Managing Director of Giuliani Capital Advisors and a Managing Director at Ernst & Young. I hold an M.A. in Mathematics and Management Studies from Cambridge University in England, and I am a Fellow of the Institute of Chartered Accountants in England and Wales. During my career in the U.K., I qualified as a Licensed Insolvency Practitioner and acted in that capacity in numerous situations.

5. I have more than thirty years of experience in restructuring and reorganization matters and have worked on a broad range of situations for companies, creditor committees, ad hoc groups, and liquidating trusts. I have expertise in analyzing critical strategic, operational, and financial factors, including business plan assessment, financial performance and forecast evaluation, and financing and capital structure evaluation. I specialize in designing and developing restructuring solutions, using refined analytical techniques, assessing business prospects and credit risk in a diverse range of situations, and issuing recommendations based upon syntheses of relevant factors, which include industry outlook, cyclicality, maturity, and competitive dynamics. In addition, I have designed and developed sophisticated financial models to assist in the assessment of potential recoveries and to test the sensitivity of such recoveries to the variability of potential outcomes.

6. Since FTI was retained by the Committee, I have familiarized myself with the Debtors' current situation, long-term business plan, proposed plan of reorganization, and value waterfall analysis.

## The Plan's GUC Settlement Allocation

7. The Plan provides that each Holder of an Allowed Class 5A Claim will receive its share of the GUC Trust Net Assets, which share is determined based upon the GUC Settlement Allocation. *See* Plan § III.B.6.b. The GUC Trust Assets must be allocated to each Debtor entity separately, as the Debtors remain unconsolidated. *See* **Exhibit A** (simplified organizational structure of the Debtors). The GUC Settlement Allocation sets out the estimated percentage of the total recoveries available to all Allowed Class 5A Claims across all Debtors that is available to Allowed Class 5A Claims at each individual Debtor, as estimated in the Plan Supplement. *See* Plan Supplement [Dkt. No. 1598], Exhibit I-3 (the GUC Trust Net Assets Distribution Structure,

describing how the GUC Trust Net Assets will be distributed among Allowed Class 5A Claims at each Debtor).

8. The GUC Settlement Allocation is the result of a multistep process performed by the Committee's advisors—in particular, by FTI in consultation with and with guidance from Committee counsel—and approved by the Committee. This multistep process included development of a value waterfall analysis to evaluate a range of potential recovery outcomes under various scenarios on a Debtor-by-Debtor basis, taking into consideration various assumptions, including potential litigation outcomes. The resulting analysis was used to determine the probability-weighted entitlement of Holders of Allowed Class 5A Claims at each Debtor (the "GUCs Multiplier %"). The GUC Trustee will use the GUCs Multiplier % to calculate the distributions to the Holders of Allowed Class 5A Claims.

9. This Declaration describes the methodology used to develop the GUC Settlement Allocation and the resulting GUCs Multiplier %.

**Development of GUC Settlement Allocation**

10. To develop the GUC Settlement Allocation, FTI began with certain baseline assumptions (specifically, assumptions provided by the Debtors' financial advisor, Alvarez & Marsal ("A&M")). FTI created a waterfall model to evaluate the amount and allocation of value available for distribution among unsecured claims using these baseline assumptions.

11. Based on diligence conducted by the Committee's advisors, including the advice of the Committee's counsel, FTI then developed alternative assumptions. FTI examined how the amount and allocation of value across the 72 Debtors changed as the baseline assumptions changed, and further limited its analysis to alternative scenarios that materially impacted the recoveries to unsecured claims.

12.     In evaluating the allocation of value, FTI looked at each of the 72 Debtors individually.  FTI determined estimated recoveries to unsecured claims at each Debtor based upon the legal rights and relationships among the Debtors, including intercompany claims.

13.     ***Baseline Assumptions***.  The baseline set of assumptions with which FTI began its analysis included, among other assumptions, an allocation of liabilities under the DIP Facilities among the Debtors based upon the distributable value at each Debtor entity, enforcement of all the intercompany claim balances, an assumed value of the Debtors' investment in the Cumulus Affiliates equal to the amount invested by the Debtors into those affiliates, zero recovery on account of the PPL Adversary Proceeding, and zero recovery or alternative waterfall on account of the claims advanced in the CAF Standing Motion, the CAF Claim Objection, and the Riverstone Standing Motion (these three, together, the "Committee Litigation Claims").

14.     The baseline waterfall model indicated the allocation of value available for distribution among unsecured claims under these baseline assumptions on a Debtor-by-Debtor basis, resulting in a model of potential recoveries to unsecured claims under such assumptions (the "Baseline Recovery Scenario").  This Baseline Recovery Scenario is consistent with the value waterfall recoveries reflected in the Plan filed on October 7, 2022.  *See Joint Chapter 11 Plan of Talen Energy Supply, LLC and Its Affiliated Debtors* [Dkt. No. 1318], Exhibit A (Value Allocation).

15.     ***Development of Alternative Assumptions***.  FTI, with input and guidance from Committee counsel, then developed a set of alternative assumptions.  FTI applied these alternative assumptions to the Baseline Recovery Scenario individually and in various combinations.  The potential alternative assumptions used, and the weighting applied thereto, were identified following further discussion with Committee counsel, including by excluding alternative recovery

scenarios with an improbable likelihood of success and by limiting the alternative recovery scenarios to those that had a material impact on recoveries to unsecured claims. This narrowed set of alternative recovery scenarios (the "Alternative Recovery Scenarios") was then risk-weighted according to the relative probability of success of each, as discussed below at paragraph 17.

16. At a high level, in deriving the Alternative Recovery Scenarios, FTI made adjustments to the following assumptions from the Baseline Recovery Scenario (*see also* **Exhibit B** (summary of value waterfall framework)):

- Allocation of DIP Facility Liabilities. Unlike the Baseline Recovery Scenario, which allocated the DIP Facilities liabilities among the Debtors based upon the distributable value at each Debtor entity, the Alternative Recovery Scenarios allocated liabilities under the DIP Facility among the various Debtors based upon each Debtor's estimated use of the proceeds of the DIP Facility. FTI estimated each Debtor's use of the DIP Facility proceeds using, as a starting point, the relative adjusted free cash flow contribution of each of the Debtors' power plant facilities.

- Postpetition Intercompany Balances. The Alternative Recovery Scenarios considered adjustments to postpetition intercompany balances with respect to a certain Debtor to reflect an alternative treatment of those balances considering the nature of that Debtor's operations and role in the organization.

- Business Plan Assumptions. The Alternative Recovery Scenarios assumed incremental value to the Debtors' estates on account of potential upside in the Debtors' business plan projections.

- Value of Investment in Cumulus Affiliates. The Baseline Recovery Scenario assigned a value the Debtors' investment in the Cumulus Affiliates equal to the value of the investments the Debtors made in the Cumulus project. The Alternative Recovery Scenarios assumed incremental value on account of the potential growth of the Debtors' investment in the Cumulus Affiliates.

- Recovery from PPL Adversary Proceeding. The Baseline Recovery Scenario did not assume any recovery from the ongoing PPL Adversary Proceeding. The Alternative Recovery Scenarios assume recoverable value from the PPL Adversary Proceedings.

- Impact of Success on Committee Litigation Claims. The Baseline Recovery Scenario did not assume any value on account of the likelihood of success of the Committee Litigation Claims. The Alternative Recovery Scenarios account for the possibility of success on one or more of the Committee Litigation Claims, including based upon the Committee's investigation of and discovery regarding these claims.

17.     ***Risk-Weighting the Alternative Recovery Scenarios***.  Each of the Alternative Recovery Scenarios was ascribed a probability of success based on advice from Committee counsel.  An overall risk-weighted probability was then calculated for each Alternative Recovery Scenario at each Debtor to reflect the likelihood of such outcome relative to other such scenarios.

18.     FTI then summed the risk-weighted probabilities of all Alternative Recovery Scenarios at each Debtor to determine a total risk-weighted recovery for Allowed Class 5A Claims at each Debtor (such recoveries at each Debtor, the "Risk-Weighted Recoveries").

19.     ***Deriving the GUCs Multiplier %***.  Once the set of Risk-Weighted Recoveries across all Debtors was determined, FTI divided the Risk-Weighted Recovery at each Debtor by the estimated Allowed Class 5A Claims at that Debtor, which estimate was provided by A&M and diligenced by FTI.  The resulting percentage is the GUCs Multiplier %.

20.     As set out in the Plan,[3] the GUC Trustee will use the GUCs Multiplier % to determine the Weighted Claim Amount for each Holder of an Allowed Class 5A Claim.  The total Weighted Claim Amounts for each Debtor will be divided by the aggregate Weighted Claim Amounts for all Debtors to determine what percentage of the GUC Trust Net Assets will be allocated to Holders of Allowed Class 5A Claims against each Debtor.  The GUC Trust Net Assets allocated to a particular Debtor will be allocated *pro rata* among the Holders of Allowed Class 5A Claims at such Debtor.  *See* **Exhibit C** (summary of the process of allocating the GUC Trust assets).

21.     **Exhibit D** is an illustration of the steps to determine the distribution to Allowed Class 5A Claims at Debtor number 37 – Barney Davis, LLC.

---

[3] *See* Plan Supplement [Dkt. No. 1598], Exhibit I-3 (the GUC Trust Net Assets Distribution Structure).

Pursuant to 28 U.S.C. § 1746, I, the undersigned, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 13, 2022

/s/ *Andrew Scruton*
Name: Andrew Scruton
Title: Senior Managing Director
FTI Consulting, Inc.

## **EXHIBIT A**



# Exhibit A: Simplified Organizational Structure

The value waterfall model developed by FTI was constructed on an entity-level basis in order to determine estimated claimant recoveries at each legal entity. The analysis allocates distributable value across entities and takes into account the redistribution of value based on intercompany and equity ownership relationships. Key material intercompany relationships as of the Petition Date are summarized in the simplified organizational structure diagram below:



1. Generation assets include with respect to Dartmouth.
2. Generation assets include with respect to: (i) Barney Davis; (ii) Laredo; and (iii) Nueces Bay.
3. Generation assets include with respect to Colstrip Unit 3.
4. Generation assets include with respect to Susquehanna.
5. Generation assets include with respect to: (i) Brunner Island; (ii) Brandon Shores; (iii) Montour; (iv) Conemaugh; (v) Keystone; (vi) H.A Wagner; (vii) Camden; (viii) Elmwood; (ix) Newark Bay; (x) York; (xi) Pedricktown; (xii) Newark Bay; and (xiii) York.

Sources: YTD May 2022 Intercompany Ledger, SOALs

2

**EXHIBIT B**



# Exhibit B: Summary of Value Waterfall Framework

The table below illustrates the framework of the FTI value waterfall model, which was constructed on a fully deconsolidated Debtor-by-Debtor basis and considered the different components of distributable value and categories of claims specific to each Debtor.

| | Base Assumptions | Alternative Assumptions | Debtor 1 | Debtor 2 | ..... | Debtor 72 | Non-Debtor Entities |
|---|---|---|---|---|---|---|---|
| **Distributable Value** | | | | | | | |
| TEV excl. Cumulus Value | Entity allocations based on DCF analysis of plant-level cash flows and entity-level balance sheets and net book value | Incremental value to the Debtors' estates on account of potential upside to the Debtors' business plan projections | $ | $ | ..... | $ | $ |
| Pre-Emergence Cash | Projected available cash as of 6/30/23 | | $ | $ | ..... | $ | $ |
| Cumulus Value | Debtors' value for equity held in Cumulus | Incremental value to Debtors' value for equity held in Cumulus | $ | $ | ..... | $ | $ |
| PPL Adversary Proceeding | n/a | Recoverable value from PPL Adversary Proceeding | $ | $ | ..... | $ | $ |
| Committee Litigation Claims | n/a | Possibility of success on one or more of the Committee's claims with respect to the CAF and Riverstone | $ | $ | ..... | $ | $ |
| Recovery on Pre & Post-Petition Intercompany Receivables | Recoveries by entity based on owing affiliate(s)' individual waterfalls | | $ | $ | ..... | $ | $ |
| Recovery on Equity from Subsidiaries | Recoveries by entity based on it's subsidiarie(s)' individual waterfalls | | $ | $ | ..... | $ | $ |
| **Total Distributable Value** | | | $ | $ | ..... | $ | $ |
| **Claims Senior to Unsecured Claims** | | | | | | | |
| DIP | Debtors contribute to DIP recoveries pro rata based on distributable value | Debtors contribute to DIP recoveries pro rata based on estimated use of DIP proceeds using plant adj. free cash flows as a proxy | $ | $ | ..... | $ | $ |
| Rights Offering & Backstop Equity Dilution | Backstop fee and value of rights offering discount | Adjusted for level of equity rights offering required, depending on the scenario | $ | $ | ..... | $ | $ |
| Pre-Petition Assumed Liabilities | Debtors' assumption of certain liabilities | | $ | $ | ..... | $ | $ |
| Chapter 11 Admin & Priority | Includes transaction costs and Riverstone settlement | | $ | $ | ..... | $ | $ |
| Post-Petition Intercompany Payables | Recoveries based on level of distributable value at owing affiliates' individual waterfalls | Adjusted certain balances based on views of a certain Debtor's operations and role in organization | $ | $ | ..... | $ | $ |
| CAF Claims | Secured claims at all obligors | Unsecured claim only at obligor that received benefit of loan proceeds, limited to amount of proceeds received | | | | | |
| Non-CAF Secured Claims | Secured claims at all respective obligors | | $ | $ | ..... | $ | $ |
| **Remaining Distributable Value for Unsecured Claims** | | | $ | $ | ..... | $ | $ |
| **Unsecured Claims** | All Unsecured Funded Debt and GUCs fully participate in equity rights offering | | | | | | |
| Unsecured Funded Debt - Backstop | Represents ~80% of Unsecured Funded Debt | | $ | $ | ..... | $ | $ |
| Unsecured Funded Debt - Non- | Represents ~20% of Unsecured Funded Debt | | $ | $ | ..... | $ | $ |
| Trade Claims | Debtors' estimate of claims by entity | Increased level of claims | $ | $ | ..... | $ | $ |
| Retail Rejection Damages Claims | Debtors' estimate of claims by entity | Increased level of claims | $ | $ | ..... | $ | $ |
| Non-Retail Rejection Damages Claims | Debtors' estimate of claims by entity | Increased level of claims | $ | $ | ..... | $ | $ |
| Litigation Claims | Debtors' estimate of claims by entity | Increased level of claims | $ | $ | ..... | $ | $ |
| Pre-Petition Intercompany Payables | Recoveries based on level of distributable value at owing affiliates' individual waterfalls | | $ | $ | ..... | $ | $ |

3

**EXHIBIT C**



# Exhibit C: GUCs Multiplier % and Allocation of GUC Trust Value

The table below illustrates the build-up of the Risk-Weighted Recoveries by Debtor across the scenarios in the FTI value waterfall model, which are the basis for the GUCs Multiplier % figures by Debtor. The GUCs Multiplier % will be utilized by the GUC Trustee to allocate the value of the GUC Trust. Further description of the methodology for the allocation of the value in the GUC Trust, along with a listing of the GUCs Multiplier % and estimated recoveries by individual Debtor, can be found in Exhibit I-3 to the Plan Supplement and Exhibit F to the Disclosure Statement Supplement.

| Calculation: | Scenarios | Debtor 1 | Debtor 2 | ….. | Debtor 72 | Total Risk-Weighted Recoveries<br>Weighted Scenario Recoveries |
|---|---|---|---|---|---|---|
| $A | **Total Risk-Weighted Recoveries Across Scenarios** | $ | $ | ….. | $ | $ |
| $B | Estimated Allowed GUCs | $ | $ | ….. | $ | $319.33M |
| C% = $A/$B | **GUCs Multiplier %** | % | % | ….. | % | % |
| $D = $B*C% | Weighted Claim Amount ($) | $ | $ | ….. | $ | $19.12M |
| E% = $D/ ($D Total) | Weighted Claim Amount (% Allocation) | % | % | ….. | % | 100.0% |
| $F = E%*GUC Trust Value | **Allocated GUC Trust Value** | $ | $ | ….. | $ | $26.05M - $37.05M |
| G% = $F/$B | Estimated Recovery | % | % | ….. | % | 8.16% - 11.60% |

4

**EXHIBIT D**



# Exhibit D: Illustration of Distribution Calculation on Allowed Class 5A General Unsecured Claims

**The table below illustrates the steps to calculate distributions for claims at a particular Debtor as further described in Exhibit I-3 to the Plan Supplement and Exhibit F to the Disclosure Statement Supplement. The example below uses the Debtor entity Barney Davis, LLC. All figures in blue are for illustration purposes only.**



**Step 1:** Estimated Total Allowed GUCs at particular Debtor: **$20.94M** at Barney Davis, LLC out of Estimated Total Allowed GUCs at all Debtors of **$319.33M** [use final amount of Allowed GUCs at such Debtor]



**Step 2:** Multiplier for particular Debtor: **6.72%** [Fixed figure]



**Step 3:** Total Weighted Claim Amounts at particular Debtor: **$1.41M** [**$20.94M** X **.0672**] [a calculation to be made]



**Step 4:** Total Weighted Claim Amounts at particular Debtor as % of Total Weighted Claim Amounts at all Debtors: **$1.41M** / **$19.12M** = **7.36%** for the particular Debtor [a calculation to be made]



**Step 5:** Distribution to Allowed GUCs at particular Debtor of GUC Trust Net Assets: **$26.05M** X **.0736** = **$1.92M**[1] [a calculation to be made]



**Step 6:** Percentage distribution on Allowed GUCs at particular Debtor: **$1.92M / $20.94M = 9.16%**[2] [a calculation to be made]

1. Assumes GUC Trust Net Assets of $26.05M; if GUC Trust Net Assets are $37.05M, the distribution to Allowed GUCs at particular Debtor would be $2.73M ($37.05M X .0736).
2. Assumes GUC Trust Net Assets of $26.05M; if GUC Trust Net Assets are $37.05M, the percentage distribution on Allowed GUCs at particular Debtor would be 13.02% ($2.73M / $20.94M).