United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 12, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 22-90054** |
| **TALEN ENERGY SUPPLY, LLC,** *et al.*, | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

### MEMORANDUM OPINION

Counsel for several claimants filed proofs of claim in Talen Montana, LLC's bankruptcy after the bar date. Counsel failed to timely file the proofs of claim because of his own carelessness. The clients request that the Court allow the late-filed proofs of claim based on their counsel's "excusable neglect" under Federal Rule of Bankruptcy Procedure 9006(b)(1). Because allowing the claims to be filed will not materially prejudice the Debtors, the claims will not impact judicial proceedings, and counsel acted in good faith, counsel's neglect is excusable. The late-filed claims will be recognized as timely filed.

### BACKGROUND

Talen and various affiliated debtors filed bankruptcy May 9, 2022. (ECF No. 1). On May 18, 2022, the Court authorized the Debtors to serve a Notice of Commencement listing the deadline for filing proofs of claim as August 1, 2022. (ECF No. 237 at 7). Various parties timely filed proofs of claim, including certain plaintiffs in the "Burnett Litigation" who assert tort claims against Talen Montana, LLC in Montana state court. On December 6, 2022, sixteen other Burnett Litigation Plaintiffs, represented by the same counsel, filed proofs of claim (the "Movants"). The Movants filed a motion to permit the late-filing of their claims two days later. (ECF No. 1665).

Counsel testified that his office received proof of claim forms in the mail for the majority of the Burnett Litigation Plaintiffs but not the Movants. (Jan. 23, 2023 Hearing at 9:15:42 a.m.– 9:16:58 a.m.). Counsel filed proofs of claim for the Burnett Litigation Plaintiffs for whom his

office received the forms.  Because he did not receive forms for the Movants, counsel did not file proofs of claim for the Movants prior to the bar date.  Counsel did not realize he had not received the forms until his office received ballots for the timely-filed Burnett Litigation Plaintiffs and not for the Movants.  (Jan. 23, 2023 Hearing at 9:17:04 a.m.–9:18:20 a.m.).  Following this discovery, counsel promptly filed the proofs of claim for the Movants.  (Jan. 23, 2023 Hearing at 9:18:25 a.m.–9:18:31 a.m.; 9:20:45 a.m.–9:20:58 a.m.).  Counsel affirmed that nothing beyond his failure to check that he had received forms for all of the Burnett Litigation Plaintiffs prevented his timely filing the Movants' proofs of claim.  (Jan. 23, 2023 Hearing at 9:20:45 a.m.–9:20:57 a.m.)

On December 15, 2022, the Court entered the Confirmation Order confirming the Debtors' Plan of reorganization.  (ECF No. 1722).  Under the Plan, the Debtors are responsible for defending or prosecuting the Burnett Litigation.  (ECF No. 1722 at 14).

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).  Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

A court may allow a proof of claim filed after the bar date if the claimant failed to timely file because of "excusable neglect."  *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 736 (5th Cir. 1995); FED. R. BANKR. P. 9006(b)(1).  Four factors, commonly referred to as the "*Pioneer* factors," guide the excusable neglect determination; those factors are: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control

of the movant; and (4) whether the movant acted in good faith.  *Id.* at 737 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

The determination of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer*, 507 U.S. at 395.  "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect[.]"  *Id.* at 392.  But excusable neglect "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."  *Id.*  "The burden to show excusable neglect is on the movant—i.e., the creditor seeking to file a late claim."  *W. Wilmington Oil Field Claimants v. Nabors Corp. Servs, Inc. (In re CJ Holding Co.)*, 27 F.4th 1105, 1112 (5th Cir. 2022) (quoting *Jinil Steel Co. v. ValuePart, Inc. (In re ValuePart, Inc.)*, 802 F. App'x 143, 146 (5th Cir. 2020)).

I.   **DANGER OF PREJUDICE TO THE DEBTOR**

The first factor focuses on prejudice to the debtor, not unsecured creditors.  *Id.* at 1113 (citing *Eagle Bus*, 62 F.3d at 737–38).  If a debtor knew of late-filed claims since their outset, such knowledge pushes this factor in favor of late-filing claimants.  *Id.*; *see Eagle Bus*, 62 F.3d at 737 ("This is not a situation where the debtor's plan was formulated, negotiated, and confirmed before notice was given of a substantial late claim.").

By the time the Debtors negotiated and formulated the Plan, they knew of the vast majority of the Burnett Litigation claims because those claimants timely filed proofs of claim.  The Debtors also knew of the Movants because they are among the plaintiffs listed in the Montana state court lawsuit.  Allowing these claims would not "disrupt the economic model on which the creditors and the debtor reached their agreements."  *See Eagle Bus*, 62 F.3d at 737–38 (quoting *Fla. Dept. of*

*Ins. v. Drexel Burham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 148 B.R. 1002, 1007 (S.D.N.Y. 1993)) (cleaned up).

The Plan defines the Burnett Litigation as:

In December 2020, Richard Burnett and Colstrip Properties, Inc. brought an action against Talen Montana and non-Debtor Does 1–10. The Burnett Litigation was subsequently amended to add the Co-Owners and Westmoreland Rosebud Mining LLC ("Westmoreland") as defendants and approximately 100 additional plaintiffs. The Burnett Litigation seeks compensatory and punitive damages for personal injury and property damage allegedly caused by coal dust blown from the Colstrip Project to neighboring properties and structural damage to homes and other structures allegedly caused by increases in groundwater levels attributable to Colstrip Project ponds and blasting activities at a neighboring coal mine owned and operated by Westmoreland.

(ECF Nos. 1417 at 84; 1722 at 8). According to the Fourth Amended Complaint filed on May 24, 2022, the Burnett Litigation Plaintiffs seek various types of damages:

1. Damages in a reasonable amount to compensate Plaintiffs for all harm they have suffered as a result of Defendants' conduct; 2. Damages for investigation, remediation, and restoration of Plaintiffs' properties to remove present contamination and prevent future contamination; 3. Damages for loss of use and enjoyment of real property; 4. Damages for emotional distress; 5. Damages for annoyance, inconvenience, and discomfort; 6. Incidental and consequential damages; 7. Damages for the costs necessary for Plaintiffs to remediate and restore their properties; 8. Costs and disbursements incurred here; 9. Punitive damages; 10. Attorneys' fees pursuant to the Private Attorney General Doctrine and any other applicable legal theory; . . . .

(*See, e.g.*, Claim No. 37444 at 33–34). In addition to these damages, the Burnett Litigation Plaintiffs seek "[a]n injunction prohibiting the Defendants from allowing coal dust to blow onto Plaintiffs' properties . . . ." (Claim No. 37444 at 34).

The Plan distinguishes "Excluded Litigation Matters" and "Non-Excluded Litigation Matters." (ECF No. 1722 at 14, 19). The Excluded Litigation Matters are seven matters, including the Burnett Litigation, which the Debtors or the Reorganized Debtors are responsible for defending or prosecuting at their sole expense. (ECF No. 1722 at 14, 66). Non-Excluded Litigation Matters

are those matters "pending on the Petition Date in which any Debtor is named as a defendant or otherwise may be liable, other than any Excluded Litigation Matter." (ECF No. 1722 at 19).

The Plan indicates that an Excluded Litigation Matter may result in a Class 5A, 5B, or 6 claim:

> [I]f the Global Plan Settlement has not been terminated, the Debtors or Reorganized Debtors, as applicable, may not settle any Excluded Litigation Matters that would result in result in [sic] a Class 5A General Unsecured Claim, a Class 5B Uri Other Claim, and/or a Class 6 General Unsecured Convenience Claim without obtaining either (i) relief from a court with competent jurisdiction . . . , or (ii) the approval of the Creditors' Committee or the GUC Trustee, as applicable.

> .   .   .

> [T]he Debtors or Reorganized Debtors, as applicable, shall have the sole and exclusive authority to defend, prosecute, settle, or otherwise resolve any and all claims or causes of action asserted against any of the Debtors or held by any of the Debtors . . . , including each of the Excluded Litigation Matters, to the extent that resolution of any such matter or issue would not result in a Class 5A General Unsecured Claim, a Class 5B Uri Other Claim, and/or a Class 6 General Unsecured Convenience Claim or waiver of any defense the Debtors had with respect to any such claim as of the Petition Date; . . . .

(ECF No. 1722 at 66–67).

The Debtors appear to believe that the Burnett Litigation Plaintiffs will obtain Class 5A General Unsecured Claims status if they are successful: "allowing the filing of any of the late-filed claims would likely prejudice other holders of General Unsecured Claims in Class 5A by reducing such holders' recoveries against the applicable Debtor entities." (ECF No. 1787 at 5). The Official Committee of Unsecured Creditors agrees:

> If the Burnett Plaintiffs ultimately prevail or enter into a settlement related to the Burnett Litigation, allowing the untimely filing of the Late Burnett Proofs of Claim will likely increase the total amount of general unsecured claims and proportionality decrease the *pro rata* recoveries for other general unsecured creditors under the Plan, despite the lack of a meaningful justification to allow the Late Burnett Proofs of Claim.

(ECF No. 1788 at 2–3).  If the Burnett Litigation simply results in general unsecured claims against the Debtors, these claims will not actually prejudice the Debtors.  Instead, this outcome simply changes the distribution to other general unsecured creditors.  General Unsecured Claims in Class 5A will share in the GUC Trust Net Assets.  (ECF No. 1722 at 38, 43).  The GUC Trust Net Assets are the GUC Cash Pool; the GUC PPL Recovery Pool; and the Committee Budget Excess less GUC Trust Expenses.  (ECF No. 1722 at 16).  The GUC Cash Pool is $26,050,000.00 to be transferred on the Effective Date; the GUC PPL Recovery Pool is 10% of any net proceeds Talen Montana obtains from an adversary proceeding against PPL Corporation and other defendants up to $11,000,000.00; and the Committee Budget Excess is any amount remaining in the Committee Budget on the Effective Date.  (ECF No. 1722 at 10, 16, 17).  Whether Talen Montana will owe more on account of additional plaintiffs in the Burnett Litigation will have no impact on the amount of the GUC Trust Net Assets to be distributed to general unsecured creditors, and thus will not prejudice the Debtors in meeting their Plan obligations.

The Burnett Litigation Plaintiffs also seek to enjoin the Burnett Litigation Defendants from allowing coal dust to blow onto their properties.  Defending against a request for an injunction may be expensive.  But the Court has seen no evidence that the defense will be more expensive by the addition of these claimants.  Moreover, it appears that the injunction would likely not be barred by the discharge injunction.  In general, an environmental issue that arises post-confirmation would not be discharged.  If an injunction is granted, it would not result in general unsecured claims; rather, complying with the injunction is something with which the Reorganized Debtors will have to contend outside of their obligations under the Plan.  Compliance *may* be costly, and preventing coal dust from blowing onto the Movants' properties *may* be more costly than only preventing coal dust from blowing onto the timely-filed Burnett Litigation Plaintiffs' properties.  But the

consequences of future environmental violations (if they exist) would not be discharged.  So, the proofs of claim would not increase the Reorganized Debtors' future environmental obligations. The timeliness of the proofs of claim is not a factor; it is the timing of the pollution that will guide the entitlement to an injunction.  While it may be true that other unsecured creditors could be prejudiced by a pro rata reduction in the distributions made to them, the Court should not weigh prejudice to unsecured creditors in deciding this factor.  This factor favors the Movants.

## II.   LENGTH OF THE DELAY AND ITS POTENTIAL IMPACT ON JUDICIAL PROCEEDINGS

The Movants filed their claims approximately four months late.  Courts have denied motions to allow proofs of claim filed closer to the bar date.  *See Bank of Am., N.A. v. Allen Cap. Partners, L.L.C. (In re DLH Master Land Holding, L.L.C.)*, 464 F. App'x 316, 318–19 (5th Cir. 2012) (upholding denial of a motion for leave to file a proof of claim 42 days late); *In re ASARCO, LLC*, 2008 WL 4533733, at *1, 3 (denying a motion for leave to file a proof of claim 70 days after the supplemental bar date); *In re KMart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004) (affirming denial of a motion to allow a late-filed claim when proof of claim was only one day late but claimant did not file a motion until 81 days after the bar date); *Unit Corp. v. Gilmore*, No. 4:21-CV-435, 2022 WL 956226, at *6 (S.D. Tex. Mar. 30, 2022), *appeal dismissed sub nom. In re Unit Corp.*, No. 22-20201, 2022 WL 13592082 (5th Cir. Oct. 6, 2022)  (finding that the bankruptcy court did not abuse its discretion in denying claims filed 70 days after the bar date).  Unsurprisingly, courts have also denied motions for leave to file proofs of claim with a larger gap.  *See, e.g.*, *CJ Holding*, 27 F.4th at 1114 (delaying the filing of a motion to file proofs of claim until two years and nine months after the bar date).  But the Court is not aware of another court holding that filing a proof of claim four months after the bar date is too late as a matter of law under all circumstances.  *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 128 (2d Cir.

2005) ("Notwithstanding the centrality of bar dates, however, neither we nor—as far as our research discloses—any other court has established a bright-line rule governing when the lateness of a claim will be considered 'substantial.'"); *cf. Kollinger v. Hoyle (In re Kollinger)*, 551 F. App'x 104, 108 (5th Cir. 2013) ("[N]o excuse justifies failing to file a brief for ten months."). Indeed, whether the length of time between the bar date and the filing date is disruptive depends on the circumstances of each case. *See Enron*, 419 F.3d at 128 ("[A] claim filed six months late will not be disruptive at all—if, for example, the proceeding has come to a temporary halt for other reasons—while one filed six weeks late, while the proceedings are in full swing, will threaten to upset the entire process." (citing *Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 108 n. 10 (D.N.J. 1993))). And the length of delay is less significant once a plan has been confirmed. *Eagle Bus*, 62 F.3d at 739 ("[B]ecause the reorganization plan has been confirmed, these claims, if allowed, would be resolved without necessitating the involvement of the bankruptcy court."); *W. Wilmington Oil Field Claimants v. CJ Holding Co.*, No. CV H-20-3014, 2021 WL 3356371, at *7 (S.D. Tex. June 29, 2021), *rev'd sub nom. In re CJ Holding Co.*, 27 F.4th 1105 (5th Cir. 2022) ("[T]he Fifth Circuit has held that the length of delay is less critical once the debtor's reorganization plan has been confirmed.").

Four months is not an insignificant period, and as discussed above, courts have denied late-filed claims made closer to the bar date than the four-month gap in this case. But four months is not definitionally too long. It is worth noting that the four-month delay is not the time in which counsel had knowledge of the missing proofs of claim and failed to file them. Rather, counsel was unaware of the missing proofs of claim during the four-month period. Upon discovering that he had not filed the proofs of claim for the Movants, counsel promptly filed the proofs of claim and moved for their allowance.

This factor does not pertain solely to the length of the delay; the Court must also examine the potential impact on judicial proceedings.  As an Excluded Litigation Matter, any delay in the Burnett Litigation may only affect distributions to general unsecured creditors.  But no matter the number of Burnett Litigation Plaintiffs, the bankruptcy case will not be delayed in the post-confirmation context.  *Cf. CJ Holding*, 27 F.4th at 1115–16 ("Accepting as true that the individual arbitrations each take about one day to complete, permitting the Claimants to file late proofs of claim could add, at a minimum, two to three months to the wage litigation and bankruptcy.").  The Court notes that allowing the late-filed claims *may* have some impact on the Burnett Litigation, but the Court is not sure that the potential delay of proceedings in another court is the appropriate focus of this factor.  *See ASARCO*, No. 05-21207, 2008 WL 4533733, at *3 ("In determining how long is too long, a court should consider the degree to which the delay may disrupt the judicial administration **of the case**." (quoting *Enron Corp.*, 419 F.3d at 128)) (emphasis added); *Gilmore*, No. 4:21-CV-435, 2022 WL 956226, at *8 ("[T]he record 'permits the reasonable inference that the delay that would result from allowing [Gilmore's claims] to proceed could significantly impact the resolution of *[Unit's] bankruptcy*.'") (emphasis added).  Even if the delay in another court is the correct focus of this factor, the Court has no evidence of the existence or substance of such a delay.  This factor favors the Movants.

## III.   REASON FOR THE DELAY

Under *Pioneer*, a party may act with neglect, but such neglect may be excusable under Rule 9006(b)(1): "[R]eading Rule 9006(b)(1) inflexibly to exclude every instance of an inadvertent or negligent omission would ignore the most natural meaning of the word 'neglect' and would be at odds with the accepted meaning of that word in analogous contexts."  *Pioneer*, 507 U.S. at 394–95.  There is no doubt that the Supreme Court views excusable neglect as a flexible concept in

which courts may be permitted to accept late filings even when the failure to timely perform a duty
is within a party's reasonable control:

> By empowering the courts to accept late filings "where the failure to act was the
> result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that
> the courts would be permitted, where appropriate, ***to accept late filings caused by
> inadvertence, mistake, or carelessness, as well as by*** intervening circumstances
> beyond the party's control. Contrary to petitioner's suggestion, this flexible
> understanding of "excusable neglect" accords with the policies underlying Chapter
> 11 and the bankruptcy rules.

*Id.* at 388–89 (emphasis added).  To determine whether neglect is excusable, the Supreme Court
looks to the four factors.  *Id.* at 395 ("With regard to determining whether a party's neglect of a
deadline is excusable, we are in substantial agreement with the factors identified by the Court of
Appeals.").  The Fifth Circuit has frequently applied *Pioneer.  See, e.g.*, *United States v. Clark*, 51
F.3d 42, 43 (5th Cir. 1995) ("In *Pioneer,* the Supreme Court flexibly interpreted the excusable
neglect standard of Bankruptcy Rule 9006(b)(1), which allows a bankruptcy court to permit a late
filing of proofs of claim if the movant's failure to comply with an earlier deadline was the result
of excusable neglect. The Court rejected the argument that excusable neglect was limited to errors
caused by circumstances beyond the late-filing party's control, concluding that the concept of
neglect is 'somewhat elastic' and may include 'inadvertent delays.'"); *id.* at 44 ("To the extent,
then, that our prior decisions strictly interpret excusable neglect in conflict with *Pioneer,* they are
disapproved."); *see also Razvi v. Dallas Fort Worth Int'l Airport*, No. 21-10016, 2022 WL
4298141, at *2 (5th Cir. Sept. 16, 2022) (reversing the district court's dismissal for a single
calendaring error leading to a missed deadline to file a certificate of interested persons); *cf. CJ
Holding*, 27 F.4th at 1117 (stating that excusable neglect is "the failure to timely perform a duty
due to circumstances that were *beyond the reasonable control* of the person whose duty it was to
perform." (quoting *ValuePart*, 802 F. App'x at 146)).

Counsel for the Movants alleges that his office only received proof of claim forms for the timely Burnett Plaintiffs.  His office mistakenly assumed every Burnett Plaintiff was included in these proof of claim forms.  When he received ballots for the timely Burnett Plaintiffs and not for the Movants, counsel realized he did not file proofs of claim for the Movants.  Counsel should not have relied on the proof of claim forms; rather, he should have checked that he filed proofs of claim for all of the Burnett Plaintiffs.  He had a list for all of the Burnett Plaintiffs, and it was entirely within his control to check that he had filed proofs of claim for all of them.  Because the reason for the delay was firmly within control of the Movants' counsel, this factor does not favor the Movants.

## IV.    GOOD FAITH

Bad faith may prevent neglect from being excusable.  *Pioneer*, 507 U.S. at 398 ("To be sure, were there . . . any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable.'").  And a lack of diligence may be severe enough to undermine a party's contention that it acted in good faith.  *See CJ Holding*, 27 F.4th at 1118; *see also Gilmore*, No. 4:21-CV-435, 2022 WL 956226, at *8 ("Even though he learned of Unit's bankruptcy on June 5, 2020, Gilmore took no action to ascertain the General Bar Date until he received the mailed notice on July 22, 2020.").  But a lack of diligence does not constitute bad faith per se.  *CJ Holding*, 27 F.4th at 1118.

There is no indication that Movants' counsel acted in bad faith.  His testimony that his office did not check the proof of claim forms it received against a list of all the Burnett Plaintiffs is credible.  This inattention to detail was careless, but such conduct is not so lacking in diligence as to constitute bad faith.  Not only is there no indication of bad faith, but there is an indication of counsel's good faith.  Counsel promptly moved to allow the late-filed claims after he received the

ballots which first alerted him to the omission of the Movants' proofs of claim.  Had counsel delayed after learning of his omission, this factor may turn out differently.  But counsel acted swiftly and appropriately following what otherwise appears to be a simple mistake.  This is not a case in which a party knew of the existence of a bankruptcy but did not bother to determine the bar date.  Counsel knew of the bar date and intended to timely file the proofs of claim.  This factor favors the Movants.

## V.    ANALYSIS OF THE PIONEER FACTORS

Even when a party could have prevented its neglect, courts may nonetheless allow a late-filed proof of claim under Rule 9006(b) if the neglect is excusable.  Determining whether such neglect is excusable requires an analysis of the *Pioneer* factors.  *Pioneer*, 507 U.S. at 395 ("With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals.").  The *Pioneer* factors are entitled to the same weight.  *See CJ Holding*, 27 F.4th at 1113 (finding that the prejudice factor is not "more important than the other three *Pioneer* factors."); *cf. Pioneer*, 507 U.S. at 398 (reasoning that if there were any evidence of bad faith, a court would not abuse its discretion in declining to find the neglect to be excusable).  Counsel for the Movants was careless in failing to check that his office filed proofs of claim for all of the Burnett Plaintiffs.  But three of the four *Pioneer* factors weigh in favor of finding that neglect to be excusable, and the Court has no evidence of bad faith.  The Court's decision is "at bottom an equitable one," and in consideration of the circumstances

surrounding counsel's failure to timely file the proofs of claim, his neglect is excusable. *See Pioneer*, 507 U.S. at 395.  The Court allows the Movants' late-filed claims.

## CONCLUSION

A separate order will be entered.

SIGNED 05/12/2023

_____
Marvin Isgur
United States Bankruptcy Judge